## Newsome v. Commonwealth.

(Decided July 1, 1924.

## Appeal from Floyd Circuit Court.

1.   Criminal Law—Previous Shooting Held Admissible in Prosecution for Malicious Shooting Pursuant to Criminal Conspiracy.—In prosecution for malicious shooting of certain person pursuant to criminal conspiracy, evidence as to shooting occurring fifty minutes prior to shooting in question was admissible, where it was occasion bringing about shooting for which defendant was being prosecuted, being part of that transaction.
2.   Criminal Law—Any Error in Instruction on Self-Defense Held Not Prejudicial.—Any error in instruction on self-defense held not reversible error, in view of Criminal Code of Practice, section 353, where it appeared that if instruction had been properly worded it would have had no effect on result.

JOHN CAUDILL for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Fred Newsome, George Newsome and Mack Newsome were indicted in the Floyd circuit court for the crime of the wilful and malicious shooting of Tommy Cole, pursuant to a criminal conspiracy entered into by them.   It is also charged in the indictment that Fred Newsome had been previously convicted of robbery on March 9, 1921, and of manslaughter on September 21,

1917.   Fred Newsome was placed on trial and was found guilty and his punishment was fixed at imprisonment in the penitentiary for life.   He appeals.

The proof for the Commonwealth shows that on the day in question, when the passenger train reached Jacks Creek, the defendants were standing on the side of the track and three or four shots were fired at the train, the bullets striking the side of the cars.   The train stopped and backed back and Fred Newsome surrendered the pistol to William Hays, who was a passenger on the train. The train then went on; the defendants went down the railroad in the opposite direction; as they went along they made various efforts to borrow a pistol, and when they got to the station they made various efforts there to borrow a pistol but failed to get one.   The train came back regularly in about an hour.   After failing to get a pistol at the station Fred Newsome went to his father-in-law's and got his father-in-law's pistol.   When the train reached the station he got behind a tree about twenty yards from the platform.   Mack and George remained on the platform.   When the train pulled in the officers, who had come back on the train for the purpose of arresting them, got off.   Taylor Begley jumped off the train and arrested Mack Newsome. Thereupon Mack Newsome struggled to get away from him, and while this was going on Fred Newsome from the tree shot at Taylor Begley and scraped his hip with the bullet.   The other officers then got off the train and were circling around to get behind Fred Newsome at the tree.   While this was going on Tommy Cole, who was summoned to assist the officers, was shot through the leg.

The proof for the defendant is in substance that Mack Newsome was drinking and for this reason fired his pistol at random; that Fred then took the pistol away from him to keep him from hurting anybody and surrendered it to William Hays when demanded; that it was a borrowed pistol and their efforts to secure another pistol was for the purpose of taking it to the man from whom the pistol had been borrowed; that Fred Newsome got behind the tree because he did not wish the sheriff to see him, thinking that the sheriff had a subpoena for him in another case, and that Taylor Begley was beating Mack Newsome over the head with a pistol and that he shot in the necessary defense of his brother Mack.

It is complained that the evidence as to what occurred at the first shooting should not have been admitted

as this was about fifty minutes before the shooting at which Tommy Cole was shot. But the first shooting was the occasion bringing about the presence of the officers on the train and without the proof of what had happened then and in the meantime, what happened at the return of the train could not be properly understood. It was in fact only one transaction although separated by fifty minutes in time and half a mile in distance, by reason of the fact that the train went on and did not return for fifty minutes.

It is also insisted that the court misinstructed the jury. Instruction 4 is the usual instruction on self-defense, but it is qualified by these concluding words: "Unless they should find him guilty under instructions number 5 and 6." By instruction 5 the court in substance told the jury that if they believed from the evidence beyond a reasonable doubt that the defendants entered into a conspiracy to kill or injure any of the officers or persons in charge of the train and pursuant to the conspiracy and while same existed and in furtherance thereof the defendant wilfully, unlawfully, maliciously and feloniously shot and wounded Tommy Cole, either while shooting at him or any of the other officers, they should find him guilty and he could not justify under the law of self-defense. By instruction 6 the court told the jury in substance that if the officers had reasonable ground to believe that the defendants had committed a felony they had a right to arrest them, and if Fred Newsome, while they were attempting to arrest Mack Newsome, with the felonious intent to kill any of the officers and to prevent the arrest of Mack Newsome, shot Tommy Cole, he could not justify his action in so doing on the ground of self-defense.

The instructions are not free from criticism, but section 353 of the Code regulating the jurisdiction of this court in criminal cases provides:

"The judgment shall be reversed for any errors of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby."

There is proof that when Mack Newsome handed the pistol to his brother he handed him some cartridges, saying: "Here is three more, meet them on the square." To the persons on the train arresting the three men one

of them then said: "I will see you later, I am one of the scrappingest fellows you have ever seen." The persons on the train had no regular authority to hold them and they jumped off when the train started. Mack then said: "Shoot them and run, Fred." Not long after the train left they met a man, searched him for a pistol and then said that they had had trouble and were going to have some guns before the train went back. To another witness, when advised to go home, one of them said: "No, I am not going home, I am going to see them fellows as they come down; that train is not going to pass back down." To another witness one of them said: "Things would be different if my gun had not hung fire." To another witness, of whom they demanded a pistol, Mack said that he was in trouble and wanted a gun. When they got to Buckingham they went into the store of Will Hall and tried to get a pistol from him. He told them that he had heard of the trouble and was not going to let them have any weapon. One of them then started around the counter to get a shotgun himself; at this time one of them had a pistol in his hand. Hall had to make him leave the gun alone.

If the defendants had conspired to shoot up the train on its return and the shots fired by Fred Newsome were fired pursuant to this conspiracy and in furtherance of it then the shooting was not in self-defense or in defense of Mack Newsome. Instruction number 5 only excluded the idea of self-defense if the shooting was done wilfully, maliciously and feloniously, pursuant to the conspiracy and in furtherance thereof, and if the shooting was so done it was not in self-defense. There was an instruction given authorizing the jury to find the defendant guilty of shooting in sudden heat of passion or sudden affray. The jury did not find the defendant guilty under this instruction but found him guilty of malicious shooting, which was in effect a finding that the shooting was done pursuant to the conspiracy.

Under instruction 6 self-defense or defense of Mack Newsome was only excluded if the shooting was done with the felonious intent to kill the officers or either of them and to prevent the arrest of Mack Newsome. If the shooting was done to prevent the arrest of Mack Newsome it was not done in self-defense or in defense of Mack Newsome, for the officers had a right to arrest Mack Newsome for the crime he had committed when the train went up.

Upon consideration of the whole case the court is satisfied that the substantial rights of the defendant were not prejudiced on the trial, and that if the instructions had been worded as suggested by counsel it would have had no effect on the result. The verdict of the jury is in effect a finding that the shooting was maliciously done pursuant to the repeated threats made that day.

Judgment affirmed.