## Thomas v. Commonwealth.

(Decided Feb. 11, 1936.)

WILSON & SMITH, RODES K. MYERS and W. R. GARDNER for appellant.

B. M. VINCENT, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant was indicted by the grand jury of Warren county for conspiring with Jim Carter for the purpose of feloniously breaking and entering a railroad car of the Louisville & Nashville Railroad Company, a corporation, and stealing therefrom goods, wares, and merchandise, and particularly a certain quantity of tobacco in transit from Bowling Green, Ky., to Little Rock, Ark. They were tried and convicted and sentenced to one year in the penitentiary. Appellant, Thomas, filed motion and grounds for a new trial, which were overruled, and he appeals.

The only grounds urged by counsel for reversal are: (1) That the evidence of the commonwealth was insufficient to authorize a conviction, and (2) the instructions given were erroneous.

(1) On July 5, 1934, the Barlow-Moore Tobacco Company of Bowling Green, Ky., delivered to the Louisville & Nashville Railroad Company at its freight depot in Bowling Green two shipments of tobacco consigned to different mercantile companies at Little Rock, Ark. The tobacco was in boxes which were wrapped or reinforced with steel straps or tape and were loaded in the freight car which was sealed as required by railroad company rules, and the car was then moved to a side track preparatory to making up the train which was scheduled to leave Bowling Green for Memphis at about 3:45 a. m. of July 6th. The loading of the tobacco in the car, and that the car was properly sealed, is established by the evidence of the railroad company's employees. C. W. McGehee, freight conductor, testified that as the train was pulling out of Bowling Green he was standing near the track waiting to catch the caboose in the rear and, as it was his custom, he noticed the car doors as the train was passing to see if they were sealed, and he thought the seal on the car which contained the tobacco was broken. The train made its first stop at Auburn, Ky., to unload some freight and he

there found the seal was broken and he took it off, and replaced it with a new seal. He produced the broken seal at the trial.

Mrs. Albert Sweeney testified that about 2 o'clock on the morning of July 6th, appellant and Jim Carter came to the house of Tom Carter, brother-in-law of Jim Carter, on Nugent street about four blocks from the railroad yards and unloaded from a Chevrolet truck a number of packages and took them into Tom Carter's house through a window, which was a part of the same house occupied by Mrs. Sweeney. Mrs. Sweeney suspected that there was something wrong and objected to the property being placed in the house and threatened to call the police. They then removed the packages from the house and reloaded them in the truck, which they had parked in the yard, and drove away. Mrs. Sweeney's husband called the police and they came to the Sweeney home in about thirty minutes after appellant and Carter had left. The policemen testified that while they were at the Sweeney home they saw appellant and Carter drive up the street in the Chevrolet truck and they followed them to where they parked it and alighted from it and hurriendly went into a house, and they examined the truck and found it empty. Mrs. Sweeney further testified that the packages which appellant and Carter had in their possessions were bound with steel tape like or similar to the ones produced at the trial. She said she could very clearly see the tape or stripes under the electric street light while they were taking the packages back to the truck. She further testified that on the next morning she found a steel tape similar to the ones exhibited at the trial, and resembling the ones on the packages, at the back of the house near the window where appellant and Carter entered the house with the packages. On the next day a portion of the tobacco which had been taken from the railroad car was found in the weeds at the back of the roundhouse on Clay street within a few blocks of the Sweeney home.

Carter did not testify at the trial, but appellant testifying for himself denied that he took the tobacco from the railroad car or had any connection with or knowledge of it, or that he conspired with Carter or any one to rob the car. He admitted that he and Carter were at the Sweeney home at the time testified to by

Mrs. Sweeney, but denied that the packages they had contained tobacco, and said that they contained bootleg whisky, which he had purchased from a man named Shields, who had died about one month before the trial. He said there were twenty gallons of the whisky and it was in quart jars and the jars were in boxes or packages similar to the ones described by Mrs. Sweeney, except that they had no tape or other stripes or marks on them as described by Mrs. Sweeney. In this respect his testimony is in direct conflict with the testimony of Mrs. Sweeney, otherwise their testimony is substantially the same.

Had appellant and his codefendant (who did not appeal) been charged only with breaking into the railroad car and stealing merchandise therefrom, there is no escape from the conclusion that the evidence was sufficient to sustain a convction. He admitted all that was testified to by Mrs. Sweeney except he denied that the package he had had bands or any stripes on them or other marks indicating bands, and attempts to explain his conduct by saying that he and Carter had bootleg whisky which he had purchased from Shields who had been dead a month before the trial. He did not testify on his examining trial, at which time Shields was living. He also admitted that he had twice been convicted of a felony in the Warren circuit court. But, it is insisted that there is no evidence tending to show a conspiracy to commit the offense. It is difficult to prove a conspiracy by direct evidence, but a conspiracy will be inferred from proven facts and circumstances when it is shown that two or more persons participated in the commission of an offense. The evidence being sufficient to show that appellant and Carter jointly participated in taking the merchandise from the railroad car, the inference necessarily arises that such joint participation had been previously agreed upon by and between them. It is not reasonable to presume that two or more persons would jointly participate in a robbery or theft without some previous understanding or agreement to commit such act, and when the evidence shows that such offense has been committed by joint participants, a conspiracy will be inferred. Alsbrook v. Commonwealth, 243 Ky. 814, 50 S. W. (2d) 22; Riggsby v. Commonwealth, 232 Ky. 226, 22 S. W. (2d) 624.

The objection offered to the instructions is that in

instruction A the court told the jury in substance that if they believed from the evidence beyond reasonable doubt that the defendants committed the offense, "you will find said defendants, or either of them, guilty as charged in the indictment." It is insisted that under this instruction the jury could have found one of the defendants guilty and the other one not guilty, which would have been inconsistent with the offense charged, since, if one is guilty of conspiracy, the other one was also guilty. It must be conceded that this form of instruction was technically erroneous and it should have been so framed as to require the jury to find both defendants either guilty or not guilty. If Carter had been found not guilty, there might have been some merit in the criticism offered to the instruction; but, inasmuch as the jury found them both guilty, the technical error was not prejudicial. The court will not reverse a case for errors not prejudicial to the substantial rights of the party excepting. Section 353, Criminal Code of Practice; Newsome v. Commonwealth, 204 Ky. 179, 263 S. W. 703.

Perceiving no error prejudicial to the defendant's substantial rights, the judgment is affirmed.