## Weisiger v. Commonwealth.

(Decided June 15, 1926.)

## Appeal from Boyle Circuit Court.

1. Indictment and Information—Indictment Charging Conspiracy to Take and Detain Woman Against Her Will Held to Charge but One Offense (Ky Stats., sections 1158, 1241a1; Criminal Code of Practice, sections 122, 124).—Indictment charging conspiracy under Ky. Stats., section 1241a1, to take and detain a woman against her will contrary to section 1158, charges only one crime, and where indictment conforms to Criminal Code of Practice, sections 122, 124, demurrer and motion to require Commonwealth to elect were rightly overruled.

2. Conspiracy.—Conspiracy to take and detain woman in violation of Ky. Stats., section 1158, held within section 1241a1, denouncing conspiracies to commit felonious acts.

3. Abduction.—Evidence that accused negro invited white girls into his fully occupied car, and that on their refusal his companions pursued them, held to warrant conviction of conspiracy to violate Ky. Stats., section 1158.

4. Abduction.—Defense that accused was too drunk to form intent of taking and detaining woman against her will held untenable, in view of evidence of his skillful driving of automobile (Ky. Stats., section 1158).

C. C. BAGBY for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Connie Weisiger, Charles Gordon and Cecil Shelby were indicted by the grand jury of Boyle county, under section 1241a-1, Kentucky Statutes, for feloniously conspiring, confederating and banding themselves together to do a felonious act. Appellant, Weisiger, was tried separately, was found guilty and by the judgment herein was sentenced to confinement in the penitentiary at hard labor for one year. He prosecutes the appeal.

It is insisted that the trial court erred in overruling appellant's demurrer to the indictment and in overruling his motion to require the Commonwealth to elect, both contentions being predicated upon the theory that the indictment was duplicitous. That alleged error is not given much attention in the brief filed for appellant, only

a short paragraph being devoted to it. The contention can not be sustained. The indictment is much longer than was necessary, but a consideration of all its allegations discloses that the only crime charged was that denounced by the statute, *supra*. The accusatory part of the indictment clearly and concisely charges the three defendants with having unlawfully, willfully and feloniously conspired and confederated together to commit a felony, to-wit, to take and detain a woman and women against her and their will, denounced as a felony by section 1158, Kentucky Statutes, and the portion of the indictment specifying the manner in which the crime charged was committed clearly states the way and manner in which it is alleged to have been done. The indictment contains a great deal of surplusage, in that it pleaded all of the facts which by way of evidence the Commonwealth expected to prove to establish that the crime charged, that is, that the three defendants indicted had conspired to commit a felony, had been committed by them. When considered in its entirety, however, it is obvious that the indictment was intended to and did charge the defendants with only the one crime, that is, conspiring, confederating and banding themselves together to commit a felonious act, the crime denounced by section 1241a-1, *supra*. It appears to conform in all essential particulars to section 124, of our Criminal Code of Practice, in that it was direct and certain as regards the party charged, the offense charged, the county in which the offense was committed and the particular circumstances of the offense charged. In conformity with the provisions of section 122 of the Criminal Code, the statement of the acts constituting the offense appears to have been alleged in such manner as to enable a person of common understanding to know what was intended and with such degree of certainty as to enable the court to pronounce judgment according to the right of the case. Those are the standards set by our Criminal Code of Practice for determining the question, and the trial court did not err in overruling the demurrer and in overruling appellant's motion to require the Commonwealth to elect.

It is insisted for appellant that the demurrer to the indictment should have been sustained upon the further ground that the felonious act which appellant and his codefendants were charged with having conspired to commit is not within the contemplation of section 1241a-1, Kentucky Statutes, and that though it be conceded that

they did conspire, confederate and band themselves together for the purpose of committing the felony denounced by section 1158, Kentucky Statutes, to do so does not constitute an offense under section 1241a-1. That question was settled finally, however, by this court in Phelps v. Commonwealth, 209 Ky. 318, wherein it was held that a conspiracy to do "any felonious act" is punishable under section 1241a-1. The question was fully dealt with in that opinion and need not be further elaborated. Appellant and his codefendants are charged by the indictment herein with having conspired and confederated to commit the crime denounced by section 1158, Kentucky Statutes, reference to which makes it appear to be a felony. Therefore, they were charged with having conspired to do "a felonious act," and under this court's opinion in the Phelps case, *supra,* a conspiracy to commit any felonious act is within the contemplation of section 1241a-1, *supra.* Therefore, the trial court properly overruled the demurrer to the indictment.

It is earnestly insisted for appellant that the verdict herein is flagrantly against the evidence. These facts appear in the record: Louise Dunn, Mary Hogue, Ruby Dunn, Catherine Dunn, Bertha Hogue and Ada Carter, all young white girls, residing in Boyle county, Kentucky, were walking together along the Danville and Hustonville road in that county on a Sunday afternoon. They were proceeding toward Danville. The three defendants, in a small automobile, described by the witnesses as a "skeeter," were proceeding along that highway in the same direction, and overtook them. The evidence from two witnesses who passed in an automobile going in the opposite direction shortly before the negroes overtook the young women discloses that before they did so they decreased the speed of the car and their actions were such as to cause the occupants of the passing car to watch them. It appears from the testimony of the young women that when the car driven by the negroes caught up with them it was stopped and appellant, who was driving, invited them to take a ride. The young women declined to do so, and, turning, started in the opposite direction; whereupon appellant's two codefendants jumped from the car, started around it to where they were and said: "By God, you will have to ride." Whereupon the young women fled in terror, and the two negroes who had left the car started in pursuit of them. The occupants of the car that had passed shortly before this,

having observed the negroes stop in the presence of the young women, and seeing them run as they did, immediately turned their car around and came back toward where the negroes were, observing which the two negroes, who had started in pursuit of the young women, left the highway and escaped by running through a cornfield alongside it, and appellant immediately started his car and hurriedly left the scene.

Neither of appellant's codefendants testified herein. Appellant testified for himself, and professed to know nothing about the facts that were testified to by the young women named and the two occupants of the car who witnessed a portion of the transaction. He testified that from the time he got into the automobile in Danville, Kentucky, that afternoon prior to the occurrence until some time in the night following, after he had returned with the car and had left it where he got it and had gone to his home, he was so drunk that he did not know anything that happened. Some three or four witnesses testifying for him established his previous good character.

Under these facts attorney for appellant earnestly urges that this court must hold the verdict of guilty to be flagrantly against the evidence. It is urged for appellant that the only thing said or done by him, according to the testimony herein, is that he invited the young women to ride in the car with them. The proof, however, establishes much more than that. Appellant was driving the car in which he and his codefendants were riding. While proceeding along the highway they came in view of the young women, who were walking therein. The seating capacity of the car in which they were riding, as described by the witnesses, was fully occupied. If the young women whom they accosted had been members of their own race, who appellant and his codefendants might have reasonably thought would ride with them, there was no room in the car. No reason appears in the record or suggests itself naturally why the young white women should have been thought by appellant and his codefendants willing to ride with them, members of the colored race, if the car in which they were riding had had plenty of room for the purpose. The car was under the control of appellant. He stopped it and he, according to the testimony, made the first improper advances to the young women. Upon their refusing to

ride and hurriedly turning to leave, appellant's codefendants immediately jumped from the car and started in pursuit, uttering the words above quoted. Under these facts and circumstances, as we view them, it may reasonably be inferred that what was done by appellant and his codefendants was done pursuant to an agreement and understanding arrived at by them before appellant stopped the car and said what he did to the young women. Indeed, it seems exceedingly hard to draw any other conclusion from those facts. It certainly was a question for the jury. It is extremely difficult in reason to attribute the things said and done by appellant and his codefendants on the occasion in question to innocent intentions. The jury certainly was authorized by the facts and circumstances in evidence before them reasonably to infer that they had conspired and agreed among themselves to commit the crime denounced by section 1158, Kentucky Statutes, and to conclude that they had so done because of what they said and what they did while acting in concert on the occasion in question. That is true because it is difficult, if not impossible, to explain or account for the things they said and what they did on this occasion upon any other hypothesis. The argument that the testimony herein establishes that appellant was so drunk on the occasion in question as not to be able to form the intent to commit the crime charged is not tenable. While he so testified, the fact remains that he was not so drunk but that he was able to drive the automobile through the crowded streets of the city of Danville and for several miles along the highways of Boyle county and back into the city of Danville again without mishap or accident. He was able to control and stop the car at the point where the young women were overtaken. He was able when they fled in terror from the advances and threats of himself and his codefendants, when he observed the car which had just passed and its occupants returning to the rescue of the girls, to leave the scene in haste and return to town. Our consideration of this case and all its facts and circumstances has led us to the conclusion that the only reasonable explanation of the conduct of appellant and his two codefendants is that they were actuated by the same criminal intent and desire which of late has led members of their race to commit crimes which have shocked the state and nation and have brought shame and disgrace upon the race to which they belong. The jury certainly could reasonably so infer

from the evidence. The verdict can not be said to be flagrantly against the evidence, and the part played in this transaction by appellant could not well have been attributed by the jury to innocence upon his part.

Perceiving no error prejudicial to appellant's substantial rights, the judgment will be affirmed.

Judgment affirmed.