## Alexander v. Commonwealth.

## Elliott v. Commonwealth.

(Decided October 8, 1926.)

### Appeals from Barren Circuit Court.

Conspiracy.—Evidence held insufficient to sustain conviction under Kentucky Statutes, section 1241a-1, of colored defendants for conspiracy to take and detain a white woman against her will with intent to have carnal knowledge of her.

WHITE & SMITH for appellants.

FRANK E. DAUGHERTY, Attorney General, GARDNER K. BYERS, Assistant Attorney General, and J. LEWIS WILLIAMS, Commonwealth Attorney, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing on each appeal.

These two appeals grow out of the same transaction resulting in a joint indictment of the two appellants, each of whom upon his separate trial was found guilty, and each prosecutes a separate appeal. By order heretofore made the two appeals are consolidated in this court, and will therefore be disposed of in one opinion.

The two defendants are charged with unlawfully confederating or banding themselves together for the purpose of doing a felonious act, in pursuance of which conspiracy they did unlawfully, wilfully and feloniously band themselves together and go forth with the intent and felonious purpose of taking and detaining a white woman against her will with the intent to have carnal knowledge of her, they each at the time being negroes.

Our conclusion upon the sufficiency of the evidence to sustain the charge makes it unnecessary to go into the contentions urged as to the insufficiency of the indictment. It is sufficient to say on that question that the indictment manifestly was drawn under section 1241a, Ky. Statutes, and without responding to the argument of appellants' counsel, it is only necessary to say that the indictment as drawn is good under that section. Eubank v. Com., 210 Ky. 150; Weisiger v. Com., 215 Ky. 172.

The appellants had separate trials, and Alexander was found guilty and sentenced to four years' imprisonment, while Elliott was also found guilty and sentenced to two years' imprisonment.

The two appellants are each young colored men, one of them eighteen and the other twenty-one years of age, and they each live at Glasgow. They were intimate friends and spent a good part of their time with each other, particularly some three or four evenings of each week. One was the driver of the truck at the local express office and delivered packages from that office and met the trains, in which occupation the other frequently accompanied him. They were each musically inclined, one performing on the piano and the other upon the saxophone. In pursuit of their musical practice they met at the home of Elliott some three or more times each week in the evening and practiced, and upon such occasions they were generally in a room to themselves for some two or three hours. In that room they had access to pen, paper and ink, and the evidence tends to show that upon one such occasion one of them (Alexander) wrote, and the other (Elliott) either dictated or helped to formulate the letter hereinafter copied, which they or one of them mailed to a young white woman of that place who was an employee at Terry's store.

The letter was duly received by the young lady at her place of business one morning, and she, after showing it to some of the other employees, took it home with her on that day and delivered it to her father. He immediately consulted with certain persons at Terry's store and they agreed to and did place as a decoy what appeared to be a letter in answer to the one so written by appellants, at the place and in the manner requested in that letter. After the decoy was so placed the father and one or two other persons secreted themselves so they might see if any one came and got it. While so secreted they saw Alexander pass along near the decoy letter some two or three times and look intently at it and the brick or rock under which it was placed; but because of the presence of certain persons in the immediate vicinity upon each occasion, he did not go to and take the decoy letter. But after a time Alexander and Elliott each came along in the express truck, Elliott driving, and as they approached the place of the decoy the truck was driven over near to the curbing where the decoy was placed and slowed up but did not stop; when it reached the place Alexander stepped out of the slowly moving truck and took the decoy letter from its place and overtook the truck and again got into it. The occupants of the

truck were promptly overtaken and apprehended and called upon to explain their conduct. They were shortly thereafter arrested and taken before the police judge, at which time or later Alexander practically admitted the authorship of the letter and implicated Elliott. Afterwards, however, in his evidence he assumed the whole responsibility and testified in substance that Elliott had no connection with the writing or mailing of the letter. There is, however, other evidence in the record, unnecessary to relate, tending to show Elliott's connection with the writing and sending of the letter.

So that we have sufficient evidence of the conspiracy to write and send the letter to the young white woman, and evidence that it was written and sent as a result of such conspiracy, but we have no evidence of felonious intent upon the part of either of the defendants of detaining the young white woman against her will with the intent to have carnal knowledge of her, unless the letter itself furnishes such evidence. There is a total lack of anything to show a demonstration by either of defendants at any time showing a purpose or attempt to detain the young woman, and if the ultimate purpose in writing and sending the letter was as charged in the indictment to detain her and have carnal knowledge of her, the evidence of such intent must be found in the letter when considered in the light of all the other evidence.

That letter so written and sent is as follows:

"Glasgow, Ky., Feb. 17, 1926.

"Dear One

While sitting alone thinking of youe, it seems an uninvisible hand has taken possession of me and compel's me to write youe. You have thrown a spell On me and I am not satisfied unless I take a look at youe or come in contact with youe someway so that's my reason for writing youe.

"Otherwise it is imposiable for me to express my thought's dear—and I am just setting here wondering now if youe will trust me enough after youe rec. this letter so as youe can answer it, and then I will write my, next letter explaining every thing; will youe trust me and can I trust youe enough to mention in my next letter some place where we can have a private conversation I dont want youer answer to get postal service at all What I mean by that is I

want youe to answer this letter and there will be a rock at Terry's Back door friday evening with 3 letters on it whitch are F. G. P. I want youe to put the answer or rather youer letter Back to me under this rock and lay it at the very edge of the pavement. listen do this directly after dark friday night. listen dear dont think. hard of me for asking youe to answer this letter the way I did. But if you trust me and answer as I tell youe thing's will work out nicely; But. if you dont keep this strictly a secret it will muss. up my plan's and mabe cost me my life; can I trust youe enough to risk my life by writing youe; Oh. I know youe worthy and I believe youe will keep this a secret. Oh I guess youe are wondering why I know youe and youe have the least Idea of who I am; Well I will tell youe in the next letter and I almost know youe wont regret answering my first letter then. I meet youe constantly on the street's and I some time's stop to admire youer good look's; youe cant possiably realize dear girl what it will mean to me to rec. an answer promply from youe, it woueld aliven things. that's in me that some people think's are still living buet whitch are really dead— listen dear I dont seam to take interest in any One buet youe dear that's why I am writting youe in this sence of words.

"so thats all this time dear will write more next time and will make up all mistake's to youe dear.

"from the One that adores the very ground youe walk on.

"P. S. I will tell you my corect name in my. next letter"

It is earnestly argued for the Commonwealth that this letter upon its face convincingly shows the evil purpose that was in the minds of the two defendants, that is to lure the woman to a dark place and there seize her and carry out their felonious purpose. It may be admitted that there are some very suggestive paragraphs in this letter, but it must be interpreted in the light of the fact that it was composed by two ignorant negro boys who had little conception of the real or hidden meaning of some of the language they used; the letter on its face is most convincing of this fact, and the other evidence makes it clear. That neither of defendants had any purpose to be present when the contemplated answer was

placed under the brick is clear not only from the context of the letter itself, but from the additional fact that they were not present when the letter was placed there by another than the woman to whom it had been addressed. While it is not disclosed in the evidence exactly what time the decoy was placed under the brick, it may be presumed that it was placed there at about the time suggested in the letter, and if either of defendants had been lurking thereabout and had seen it placed there by another than the addressee, obviously they would have become suspicious and would never have gone to the decoy letter and thereby fallen into the trap set for them.

The dominant idea in the epistle after all, when the inaccurate use of words and the clumsy forms of expression are eliminated, is that an answer to the letter above all else was desired, and not that the writer or writers expected to be there in person to receive that answer. Not only is there nothing discernible from the letter itself to show a purpose upon the part of defendants to be present when the answer was placed under the rock, but the evidence discloses in addition that the place where she was requested to place that answer was not in a dark place, as said by the Commonwealth, but was on the pavement only a short distance from a burning electric light.

It is often a most difficult task, involving the greatest exercise of ingenuity by trained minds, to determine what is meant in a writing drawn by highly intellectual men and women; but the difficulty is many times multiplied when we are called upon to say from an awkward, inaccurate, clumsy and hastily written letter of two uneducated and ignorant negroes what they may have had in their minds. Admitting for the purposes of this case that it was a most reprehensible thing for these two negro boys to do, and admitting that there are some expressions used in the epistle evidencing impure thoughts, yet the fact remains that no single act or step by either of them shows any purpose upon their part to forcibly detain the young woman, and the letter furnishes the evidence of no such purpose. The dominant thing shown by the letter is the desire to get an answer to the end that a correspondence may be opened up whereby the writer of this unintelligible letter may, as he doubtless conceived, thereby come in "contact" with the young lady. It is easily conceivable that this was their conception in the use of the word "contact."

The letter was an anonymous one, and it is not inconceivable that, as claimed by appellants, it was just a piece of "foolishness" upon their part; or that they conceived the idea that they would write this anonymous letter to a young white woman, leaving her to believe, as naturally she would, that it was written by a white person; and that she so believing would answer it and they would get the answer and have a great joke out of it.

Another view of it. Suppose these two negro boys had written that self-same letter to a negro girl, or suppose two white boys had written the self-same letter to this white woman. In either instance would it not have been treated as a silly and harmless love-letter, awkwardly and badly prepared? In either instance would it have resulted in a criminal prosecution?

We are unable to say from anything in this letter, or from any conduct of either of appellants, there may be seen a purpose to detain this young woman against her will. The Commonwealth has not shown a conspiracy, as charged, to detain this young woman against her will.

We are constrained, therefore, to hold that each of the defendants was entitled to a directed verdict of not guilty.

The judgments are each reversed with directions to grant each of the appellants a new trial, and for further proceedings consistent herewith.

Whole court sitting.