## Sosby v. Commonwealth.

(Decided October 28, 1927.)

### Appeal from Nicholas Circuit Court.

1. Conspiracy.—An indictment under Ky. Stats., sec. 1241a-1, relative to conspiracy to alarm, intimidate, disturb, and injure another, need not allege that the conspirators did "go forth" for such purpose.

2. Conspiracy.—In a prosecution under Ky. Stats., sec. 1241a-1, for conspiring to alarm, intimidate, disturb, and injure another person under evidence, whether such conspiracy existed was for the jury.

3. Conspiracy.—In prosecution for conspiracy under Ky. Stats., sec. 1241a-1, to alarm, intimidate, disturb, and injure another person, where it was shown that the accused's brother had invited

the accused to conspire in violation of the statute, held that
whether accused heard his brother's invitation and acted thereon
was for the jury.

4.   Conspiracy.—In prosecution for conspiring, in violation of Ky.
Stats., sec. 1241a-1, to alarm, intimidate, disturb, and injure an-
other, evidence that a brother of the accused had invited the
accused to so conspire held admissible on the question of the
accused's guilt.

M. C. REDWINE and C. S. MOFFETT for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F.
CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirm-
ing.

The appellant and his two brothers, Bryan Sosby
and Zora Sosby, were jointly indicted by the grand jury
of Nicholas county for the offense of confederating and
banding together for the purpose of intimidating, alarm-
ing, disturbing, and injuring another person, being the
offense denounced by section 1241a-1 of the Kentucky
Statutes. The appellant on his separate trial was found
guilty and his punishment fixed at confinement in the
penitentiary for the period of one year. He appeals.

He insists that the indictment was bad on demurrer,
the basis of his argument being that it fails to allege that
the conspirators, pursuant to the alleged conspiracy, did
go forth to alarm, intimidate, disturb, and injure another.
Section 1241a-1 does not require that the conspirators
shall go forth. That is the offense denounced by section
1241a-2 of the Statutes, and hence it was unnecessary for
the indictment to contain the allegation which appellant
insists should have been in it. See Asher v. Common-
wealth, 211 Ky. 524, 277 S. W. 842. In Weisiger v. Com-
monwealth, 215 Ky. 172, 284 S. W. 1039, the appellant
was contending that an indictment for conspiracy was
duplicitous, because as claimed, it alleged in addition to
the allegations about the formation of the conspiracy,
the fact that the conspirators had gone forth and con-
summated the conspiracy. We said:

"The indictment contains a great deal of sur-
plusage, in that it pleaded all of the facts which by
way of evidence the commonwealth expected to
prove to establish that the crime charged—that is,
that the three defendants indicted had conspired

to commit a felony—had been committed by them. When considered in its entirety, however, it is obvious that the indictment was intended to and did charge the defendants with only the one crime—that is, conspiring, confederating and banding themselves together to commit a felonious act—the crime denounced by section 1241a-1, supra.''

Thus we see that under section 1241a-1 of the Statutes it is unnecessary to allege that the conspirators did go forth to intimidate or alarm another. This disposes of appellant's contention regarding the indictment. His contention regarding the error in instructions is based on the same idea as that regarding the indictment, and, as the latter is without merit, as we have seen, so is the former.

Appellant next insists that he was entitled to a peremptory instruction. This contention necessitates a resume of the evidence. The appellant had had some trouble with Everett Deatley, and, meeting Deatley in a restaurant in Carlisle, upbraided him about the matter. They left the restaurant together and continued their quarrel on the sidewalk in front of the restaurant. Some police officers of Carlisle came up to quiet and separate them. About this time Zora Sosby also came up, and said to his brother in substance, ''Jesse, just let this go until we get him out on the road; we will settle it.''

The police officers testify that the appellant was so close that he must have heard this statement of Zora Sosby, but the appellant denies that he did hear it. At all events, the appellant and Deatley separated, each going his own way. Jesse Sosby and his brother Zora Sosby then got in their Ford automobile and left Carlisle for their home. Deatley, fearing trouble on his way home, armed himself and got into his automobile and likewise went home, his route being the same as that of the Sosbys. On their way home, the Sosby brothers picked up their brother Bryan Sosby out in the country, and the three were riding along the road when Deatley overtook them. Jesse Sosby, who was driving his car, weaved it back and forth in the road so as to prevent Deatley passing, and then stopped it in such a way as to completely block the road. Of course Deatley had to stop his car. Jesse Sosby claimed that something was wrong with the lights on his car, and he had gotten out to fix them. He said he did not know that Deatley was behind him. Deat-

ley testified though that, when Jesse Sosby stopped his car, the latter immediately jumped out and with a drawn knife came running back to the car in which Deatley was, cursing and abusing Deatley, and that thereupon Deatley jumped out of his car, drew his gun, and fired it at Jesse Sosby. Deatley said that about this time Bryan Sosby began advancing on him. Some friends of Deatley, who had seen him leave Carlisle, and fearing that he would be attacked before he got home, had followed him out of Carlisle in an automobile, and they arrived on the scene just about this time, and they said that they too saw Bryan Sosby as he was about to attack Deatley, but that he, seeing them, desisted from the attack, that he got his brother Jesse Sosby into the Sosby car, and that the three brothers then drove off. On this statement of the evidence, it is obvious that this was a case for the jury.

Appellant lastly contends that the court improperly admitted in evidence the remark of Zora Sosby to Jesse Sosby in front of the restaurant, and cites in support of his contention the cases of Eaton v. Commonwealth, 122 Ky. 7, 90 S. W. 972, 28 Ky. Law Rep. 906, 12 Ann. Cas. 874; Newman v. Commonwealth, 88 S. W. 1089, 28 Ky. Law Rep. 81, and Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142. The rule concerning "admissions by silence" is thus stated in Jones on Evidence, section 289:

> "Declarations or statements made in the presence of a party are received in evidence, not as evidence in themselves, but to ascertain what reply the party to be affected makes to them. If he is silent when he ought to have denied, the presumption of acquiescence arises. But it is clearly otherwise when his silence is of a character which does not justify an inference. . . . Nor is such silence an assent, unless the statements were such as to properly call for a response."

In the cases from this jurisdiction cited by appellant, the latter part of the rule as thus announced by Jones was applied either because it did not appear that the accused had heard or could be presumed to have heard the declaration, or because the circumstances were such as not to call for a reply on the part of the accused. But in all these cases, the statements by the third parties were statements concerning the actions or liabilities of the accused. The statement of Zora Sosby in this case was no

statement concerning any action then taken by the accused or concerning any liability of his. It was an invitation by Zora to Jesse to later take care of Deatley. Although Jesse said he did not hear this invitation, yet the proof for the commonwealth showed that he must have heard it. This being true, it was for the jury to say whether Jesse did hear it or not. See Jones on Evidence, section 289. The statement of Zora was not introduced to show any action or liability on the part of Jesse at that time but only to show an invitation to enter into a conspiracy. A conspiracy is essentially an agreement. To reach an agreement, there must first be a proposal. Zora's proposal imposed no liability on Jesse. Standing alone, it did not affect or hurt Jesse, but the subsequent actions of Jesse, if the commonwealth's proof is to be believed, indicated that Jesse later accepted and acquiesced in Zora's proposal. The evidence is clearly distinguishable from that ruled out in the cited cases, and was plainly admissible to establish a proposal to enter into a conspiracy, which proposal, the other evidence for the commonwealth showed, was later accepted.

These are the only errors relied upon for reversal, and, they not being sufficient for that purpose, the judgment is affirmed.