# Riggsby v. Commonwealth.

(Decided December 20, 1929.)

WAUGH & HOWERTON for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

The appellant and defendant below, Elbert Riggsby, was indicted by the grand jury of Boyd county under section 1241a1 of the 1922 edition of Carroll's Kentucky Statutes, and in which he was accused of conspiring with Fred Galloway, Wade Galloway, Hy Walker, and John Blankenship for the purpose of feloniously breaking and

entering the storehouse of the Hampton Grocery Company, a corporation, and stealing therefrom goods, wares, and merchandise, and which offense was committed pursuant to such conspiracy. Under his plea of not guilty he was convicted at his trial in the same court, and punished by confinement in the penitentitary for a period of two years, and, from the order of the court overruling his motion for a new trial, and the judgment pronounced on the verdict, he prosecutes this appeal.

The section under which the indictment was returned first makes it a felony for one to conspire with another or others to commit certain enumerated acts, and then says, "or to do any felonious act," which language we interpreted in the case of Phelps v. Commonwealth, 209 Ky. 318, 272 S. W. 743, to include a conspiracy to commit any felony, and that the "ejusdem generis" doctrine did not apply so as to confine the application of the section to the conspiring to do kindred or like acts first enumerated in it. Under the principles of that opinion, this prosecution is maintainable.

The only grounds urged by counsel for reversal are (1) that the evidence of the commonwealth was insufficient to authorize the conviction, in that the testimony of the accomplice witness (one of the alleged conspirators) was not legally corrborated so as to sustain the conviction under the provisions of section 241 of the Criminal Code of Practice; (2) that the sheriff having charge of the jury was not sworn at the time the case was submitted when the jury retired to its room for a consideration thereof, and (3) improper remarks made by prosecuting counsel in his closing argument to the jury—and which will be disposed of in the order named.

1. Fred Galloway, one of the alleged conspirators, and defendant lived in the same block with an unoccupied and vacant dwelling between them. There was also a vacant dwelling on the opposite side of defendant's residence in that same block, and, at the end of it, next to Galloway's residence, the storehouse of the Hampton Grocery Company was located. The goods taken from the Grocery Company were about 2,500 pounds of sugar, the larger portion of which was Arbuckle's white sugar, in sacks, and a small portion was brown sugar. Blankenship, the accomplice witness, introduced by the commonwealth testified, that in the afternoon preceding the robbery of the store, Fred Galloway approached him and

stated that he knew a person who would buy all the sugar that they would or could take from the store and whom he stated was the defendant, the close neighbor of Galloway. The two later went to defendant's home and had a conversation with him, in which it was agreed that the robbery would be committed that night and defendant would take the fruits thereof at 3 cents per pound.

Some time before 9 o'clock, when the robbery was committed, Galloway and Blankenship again visited defendant at his residence, and the robbery was completely planned; the defendant suggesting where the stolen sugar should be deposited, which was on a vacant lot nearby, and that he would procure a truck and haul it and put it in the vacant house next to his residence. He also suggested how the store could be gotten into with the aid of a ladder reaching to a window on the second story of the building and he likewise suggested where the ladder could be obtained. Defendant immediately departed for the truck, and before he returned with it the store had been robbed and the sugar deposited at the point agreed upon, and was later moved by him with the truck to the vacant house, in which a portion of it was found by the officers the next day, and it was completely identified as coming from the store of the Hampton Grocery Company.

The next morning between 3 and 4 o'clock, defendant appeared, driving an automobile, at the residence of W. M. Sprouse across the Ohio river, and about 12 miles from the store that was robbed, and, after waking Mr. Sprouse, the object of the visit was made known, and which was that defendant had a large quantity of sugar in his automobile that he proposed to sell to Sprouse, and which the latter bought, and it was Arbuckle's white sugar, and contained marks enabling the operators of and the clerks in the store to identify it as a part of the stolen goods.

After defendant and his alleged conspirators were arrested and put in jail, defendant occupied a cell on one story, and just above him Blankenship and Fred Galloway were imprisoned, and the accomplice witness testified that defendant, while the parties were so situated, delivered to him a note addressed to Fred Galloway, in which defendant stated, in substance, that he thought the commonwealth would introduce a witness

from Ohio who would testify about his selling the sugar as above described on a day after the robbery, but that he (defendant) was going to swear that the sale so made by him was on February 1, 1929, which was four days before the robbery of the store, it having occurred on February 5, 1929. He also stated in that letter other things to which he was going to swear at his trial, and he wanted Blankenship and Galloway to corroborate him and urged them to "listen close to what I swear so you can swear the same and tell the same tail." That letter was unsigned but the witness, not only testified that it was deliered to him by defendant, but he likewise identified the handwriting of defendant, with which he stated he was acquainted. The sale of the sugar to Sprouse in Ohio was testified to by both himself and his wife.

Defendant denied the conspiracy or any knowledge of the robbery, but he admitted selling the sugar to Sprouse, stating, however, that it was on Febraury 1, 1929, four days before the robbery, and that the amount so sold was 600 pounds, and that he had obtained it from Blankenship, the accomplice witness, who testified as above indicated. He was pushed for an answer to the question as to why he sold that sugar so far away from home and at such an early hour in the morning, but the one that he furnished was that he had his money invested in the sugar and wanted to realize thereon. Some of the immaterial details we have omitted and those stated might not be entirely accurate, but the substance of the testimony was as we have outlined it.

Section 241 supra, of the Criminal Code of Practice forbids a conviction upon the testimony alone of an accomplice, and requires that such testimony shall be "corroborated by other evidence tending to connect the defendant with the commission of the offense." It also prescribes that the required corroboration "is not sufficient if it merely show that the offense was committed, and the circumstances thereof." In an unbroken line of opinions this court has interpreted that section exactly as it is written; i. e., that the testimony of the accomplice must be corroborated by evidence tending to *connect* the defendant with the commission of the offense, and that such corroboration or *connecting* evidence must go farther than to show "that the offense was committed and the circumstances thereof." A great number of

those cases will be found in the notes to the section, and, since there are none to the contrary, we deem it unnecessary to insert any of them in this opinion; but such corroboration may be proven by circumstances alone if sufficient therefor, without the requirement of positive or express testimony. Bowling v. Commonwealth, 193 Ky. 642, 237 S. W. 381, and Mattingly v. Commonwealth, 195 Ky. 838, 243 S. W. 1044. The question therefore for determination is, whether the testimony in this case was sufficient to *connect* defendant with the conspiracy alleged in the indictment and for which he was tried and convicted, and which it must be remembered is separate and distinct from the breaking into and stealing from the storehouse of the Hampton Grocery Company. In determining the question, we should analyze the evidence and take into consideration the presumptions arising from facts established by testimony *other than* that of the accomplice; and it should further be borne in mind, as the analysis proceeds, that the testimony of the accomplice in this case that he and Fred Galloway broke into the store is not required to be corroborated, and therefore his testimony is sufficient to establish that fact, or to authorize the jury to so find. Therefore it neither was nor is necessary that there should be other evidence connecting the witness and Galloway with breaking into the store and stealing therefrom the sugar about which the witness testified. The first step in analyzing the testimony is to ascertain whether there is any independent testimony *connecting* defendant with breaking into the store, which is the offense that the indictment charges him with conspiring to commit.

There was evidence, independent of that given by the accomplice, to authorize the jury to find, as it evidently did, that defendant was guilty, either singly or jointly, with his coconspirators, of breaking into the store, and which evidence was the proof by the Ohio witness that he possessed some of the sugar stolen from the store at the time it was broken into and which possession recently followed the breaking. It has long been the law that the possession of stolen goods under such circumstances not only raised a presumption of the guilt of the possessor, but was sufficient to sustain a conviction. 36 C. J. 867, sec. 427, and a long list of cases in note 49 thereto, including Branson v. Commonwealth, 92 Ky. 330, 17 S. W. 1019, 13 Ky. Law Rep. 614, and

Davis v. Commonwealth, 191 Ky. 242, 229 S. W. 1029.. See, also, Wallace v. Commonwealth, 187 Ky. 776, 220 S. W. 1051, and the Phelps case, supra. The list of domestic cases so holding could be greatly lengthened, but we deem it unnecessary, since the principle is thoroughly established and universally applied without exception; the latest case from this court being Shaw v. Commonwealth, 229 Ky. 412, 17 S. W. (2d) 267.

We have, then, testimony sufficient to show that defendant participated in the robbery in some way. We have testimony that needs no corroboration, as we have seen, that the accomplice witness and Fred Galloway also participated in it. If defendant did so participate, it was necessarily in conjunction with Blankenship and Galloway, or at least the competent testimony was sufficient to authorize the jury to so conclude; and, if defendant had been tried for the robbery of the storehouse, the evidence was amply sufficient to sustain a verdict of guilty, and which would have established the fact that defendant and the other two conspirators, one of whom was the accomplice witness, jointly committed the offense. That being true an imperative inference would necessarily arise that such joint participation had been previously agreed upon by and between the participants, one of whom the evidence authorizes the conclusion was the defendant, and which inference *tended to connect* him with the conspiracy or agreement to commit the robbery of the store, and satisfied the requirements of section 241, supra, of the Criminal Code as to the character of corroboration necessary to sustain the conviction. We therefore conclude that ground 1 should be and it is overruled.

2. Ground 2 is bottomed upon an alleged failure of the trial court to comply with the requirements of section 245 of the Criminal Code of Practice, which says: "When the jury is kept together in charge of officers, the officers must be sworn to keep the jurors together, and to suffer no person to speak to, or communicate with, them on any subject connected with the trial, and not to do so themselves." The case of Commonwealth v. Shields, 2 Bush, 81, is relied on to sustain this ground. But that opinion went no further than to determine that the requirements of the then section 242 of the Criminal Code of Practice (which was the same as our present section 245 of the same Code) with reference to the

swearing of the jury as therein prescribed was mandatory, and unless followed, would authorize a reversal of the judgment. The opinion, however, further held that only one such swearing was necessary in order to satisfy that Code provision, and that, when once done, it need not be repeated at any time thereafter. The court in its opinion said: "We are of the opinion that it was not necessary that the sheriff after being sworn to perform his duty, should be again sworn at each adjournment or recess of the court." The record in this case expressly shows that upon the first adjournment of court the sheriff, took charge of the male members of the jury and a lady deputy sheriff took charge of the female members, and that they "each took the oath required by law," and the court was adjourned until 1 p. m. The trial was completed that afternoon and a verdict rendered. So that there was no adjournment after the convening of court for the noon recess until the trial was finished. But whether so or not, under the authority of the Shields opinion, the *one* swearing of the officers was sufficient, and for that reason this ground is without merit.

· 3. We have concluded that ground 3, if properly presented, is without merit; but it was not relied on in the motion for a new trial, and for that reason cannot be considered by us (Hendrickson v. Commonwealth, 146 Ky. 742, 143 S. W. 433) even if it possessed merit, but which we are convinced it does not.

Finding no error prejudicial to the defendant's substantianl rights, the judgment is affirmed.