## Smith v. Commonwealth.

(Decided Oct. 29, 1937.)

D. HOLLENDER HALL for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At the July, 1936, term of the Knott circuit court, its grand jury returned an indictment against appellant, Robert Smith, and Sam Gibson, wherein they were charged with having committed the offense denounced

by section 1241a-1 of Baldwin's 1936 edition of Carroll's Kentucky Statutes, i. e., that of confederating and banding themselves together for the purpose of intimidating, alarming, disturbing, or injuring Andrew Cornett. The indictment also contained the further unnecessary, but not fatal, charge that the two defendants therein did, in pursuance of the alleged conspiracy, alarm and disturb, by threats and violence, and the use of insulting or abusive language, "the said Andrew Cornett." However, the offense is complete without the actual perpetration of the object and purpose for which the conspiring and confederating was entered into. Sosby v. Commonwealth, 221 Ky. 589, 299 S. W. 211.

At his separate trial of the accusation preferred against him, the appellant, Robert Smith, was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial was overruled, and from the verdict and judgment pronounced thereon he prosecutes this appeal. Three grounds are urged by counsel in his brief in support of his argument, and which are: (1) Error of the court in overruling appellant's motion for a directed acquittal made at the close of the commonwealth's testimony, and also at the close of all of the testimony; (2) insufficiency of the testimony to sustain the verdict, or that it is flagrantly against the evidence; and (3) failure of the court to submit to the jury the whole law of the case. Since grounds (1) and (2) relate exclusively to the insufficiency of proof, they will be considered and determined together.

The testimony introduced by each side is exceedingly short and skeletonic. The intervening spaces between the points to which it was directed were untouched by the witnesses in giving their testimony; evidently because they were not interrogated so as to disclose all of the facts that occurred upon the occasion under investigation. However, these facts were developed: The two defendants, the prosecutor, Andrew Cornett, and the witnesses, Jeff Owens, Carue Messer, and Marion Smith, with unnamed others, resided in the mountain community where the involved occurrences happened, which was on May 9, 1936. Cornett's residence was located in one of the corners formed by the conjunction with Mill creek of a tributary flowing into it. Along that creek, as well as up the tributary, were traveled roads, but whether they were county public roads does not appear. Some time in the afternoon of

that day, the two defendants in the indictment got to-gether at Jack Davidson's residence (appellant's broth-er-in-law) located down Mill creek from Cornett's resi-dence some short distance, and they, with their com-panions (whose names were not disclosed), imbibed some liquor, since the two became more or less intoxi-cated, with Sam Gibson considerably so. Appellant also resided in that direction from Cornett's residence. Going away from Davidson's residence, they started up Mill creek about 4 o'clock in the afternoon. Some-where in front of Cornett's residence they met Marion Smith and perhaps others. Gibson, who was carrying a .22 rifle, became involved in a quarrel with Marion Smith, who was a nephew of Cornett. That quarrel resulted in nothing but a fisticuff fight between the two combatants; the principal cause of which was, no doubt, the liquor that both of them had consumed. In the tustle that ensued, some palings of a fence (perhaps around Cornett's yard) were knocked off, and which caused Cornett to go from his house to the scene of the fight; but there is no testimony whatever of any acts or words on his part indicating anger towards either of the defendants or any one else, nor did he make any com-plaint about the damage done to his fence; nor did he become angry toward Gibson for having engaged in a fight with his nephew, Marion Smith. The fence was then repaired, and appellant lent his services in doing so.

Marion Smith disappeared, and the two defendants in the indictment continued their journey up the road skirting the banks of Mill creek, although the defendant Gibson lived from that point up the tributary to which reference has been made. By the time they got to the residence of Jeff Owens, about 400 yards from the Cor-nett residence, it became evident that Sam Gibson had become so intoxicated that he could travel no farther, and the two defendants went into the house of Owens, with the latter's consent, and put Gibson to bed, where he slept until some time past 10 o'clock that night. When he arose, and perhaps after consuming more liquor (for he was more or less intoxicated when he left the Owens residence), he and appellant (the two defendants in the indictment) started down Mill creek in the road re-ferred to towards their respective homes with the dec-laration that they were going home. Gibson still had his .22 rifle, and when they got to the point in front of

Cornett's house where the two roads leading to their respective residences diverged, they engaged in a discussion as to which residence they would go to and spend the rest of the night; each of them insisting that his residence should have the honor of their protection during that time. In that discussion they engaged in some loud whisky talk, and Cornett testified, and in which he was corroborated by some members of his family, that he heard Smith say to Gibson, "Give me a cartridge and I will shoot the God dam s— of a b——'s brains out." He was then asked: "Who was he talking about?" He answered: "I don't know, and about that time the gun fired and I said 'go on down the road, I don't want no trouble.' '' He then testified that appellant cursed in reply to that request, and said, "I am out in the road and I will do as I please," and that one of them then fired the .22 rifle a second time; whereupon witness obtained his shotgun and fired in the direction of the two appellants, one of whom was struck with some of the shots, but not wounded. Defendants then went up the road to the home of Gibson, where they spent the remainder of the night.

We have recited all of the material facts contained in the record as given by witnesses for both the prosecution and the defense, and in which there is practically no contradiction; except upon a point not bearing upon the crucial issue of "conspiracy." The point upon which there was a contradiction in the testimony was whether Cornett shot at the two defendants before one of them fired the .22 rifle. They testified that he did do so, while he and two members of his family testified to the contrary. But in either event the controversy between Cornett and the two defendants, during which the shooting by both parties took place, furnishes no evidence of a previously-formed conspiracy, but only proves unauthorized, and very much to be condemned, conduct on the part of defendants while traveling the road running in front of Cornett's house. There is no evidence that they had stopped at that point because it was in front of his house, so as to intimidate or harm him, but because it was the separating point of the two roads leading to their respective homes. No testimony was offered to prove any prior enmity between Cornett and the alleged conspirators, nor did any witness testify that there was any animosity created between them growing out of the slight disturbance produced by the

fight between Sam Gibson and Marion Smith in the earlier part of the same evening. Not a breath of testimony was given by any one of any threats following that occurrence towards Cornett by either of the defendants. At the last disturbance, to which reference has been made as occurring in front of Cornett's house, the parties had the same single firearm that they had throughout the preceding afternoon. At no time was any threat made by either of defendants against Cornett or any member of his family, and no motive whatever is shown for either of the defendants wanting to intimidate or alarm him. The whole transaction pictures but the ordinary occurrence of two individuals being more than 50 per cent. intoxicated and engaging in the character of talk and conduct which is the usual outgrowth of such a condition.

In the case of Glass v. Commonwealth, 249 Ky. 757, 61 S. W. (2d) 629, 630, involving a conviction for a similar offense for which this indictment was found, we said: "It has been said that a conspiracy is almost necessarily established by welding into one chain circumstances which, when considered separately, are of themselves insufficient and inconclusive, but, when connected and examined as a whole, are sufficient to show it. Riggsby v. Commonwealth, 232 Ky. 226, 22 S. W. (2d) 624; Howard v. Commonwealth, 220 Ky. 585, 295 S. W. 888; Middleton v. Commonwealth, 204 Ky. 460, 264 S. W. 1041; Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315; Gibson v. Commonwealth, 189 Ky. 89, 224 S. W. 657." However, we held that the facts and circumstances in that case were insufficient to sustain the charge, notwithstanding we recognized the fact that: "A confederation or conspiracy may be established by the acts, conduct, or declarations of the participants or by facts or circumstances, but it may not be established by mere suspicion nor by association of the parties. Helton v. Com., 245 Ky. 7, 53 S. W. (2d) 189; Alsbrook v. Com., 243 Ky. 814, 50 S. W. (2d) 22; Baird v. Com., 241 Ky. 795, 45 S. W. (2d) 466; Fulks v. Com., 237 Ky. 642, 36 S. W. (2d) 36; Slaven v. Com., 197 Ky. 790, 248 S. W. 214; Pace v. Commonwealth, 170 Ky. 560, 186 S. W. 142."

The cited cases in the excerpts from the Glass case thoroughly establish these two principles; that it is competent to prove a conspiracy by circumstantial evidence, since the very nature of its formation is secre-

tive, and that it may be done by that character of proof when all of the circumstances, viewed as a whole, are sufficient to produce the conviction that a conspiracy existed, although the isolated circumstances considered alone would be insufficient for that purpose. The other principle is that if the testimony, including the circumstances, does no more than produce a surmise or suspicion that the charged conspiracy was entered into, then a conviction is improper. We also call particular attention to the cases of Alexander v. Com., 215 Ky. 832, 287 S. W. 29; Wood v. Com., 230 Ky. 813, 20 S. W. (2d) 980, and Sexton v. Com., 262 Ky. 636, 90 S. W. (2d) 999. They were prosecutions for violating the same statute involved in this indictment, and we held in each of them that the testimony was insufficient to sustain the conviction returned by the trial jury. In this case, appellant and his codefendant, Gibson, were pursuing the usual conduct generally engaged in by persons similarly situated, conditioned, and environed. They had no motive to harm their alleged victim, and, therefore, no grounds for conspiring to do so. No express or other testimony of any such conspiracy was introduced, and we are constrained to the conclusion that the proof was insufficient to authorize a submission of the case to the jury, and that defendants' tendered peremptory instruction of acquittal should have been given.

It is true that the conduct of the two defendants in the indictment on the occasion referred to was very reprehensible, and they were clearly guilty of a breach of the peace. Perhaps, also, at least one of them was guilty of intentionally shooting at another without wounding; but they were neither indicted nor tried for either of those offenses, and their possible guilt of either of them cannot be considered on the trial of the instant indictment. For the reasons stated, it will be unnecessary to consider any of the other grounds argued for reversal.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial, and set aside the judgment, and for proceedings consistent with this opinion.

The whole court sitting.