## Benge et al. v. Commonwealth.

April 29, 1947.

Ray C. Lewis, Judge.

J. Milton Luker for appellant.

Eldon S. Dummit, Attorney General, and Joe L. Hughett, Assistant Attorney General, for appellee.

610

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

Appellants were jointly indicted on a charge of banding and confederating and upon conviction were sentenced to two years in the penitentiary. The indictment apparently charges violation of KRS 437.110 which is as follows:

"No two or more persons shall confederate or band themselves together for the purpose of intimidating, alarming, disturbing or injuring any person, or of taking any person charged with a public offense from lawful custody with the view of inflicting punishment on him or of preventing his prosecution, or of doing any felonious act.

"No two or more persons shall confederate or band themselves together and go forth for the purpose of molesting, damaging or destroying any property of another person, whether the property is molested, damaged or destroyed or not.

"Any person who violates this section shall be confined to the penitentiary for not less than one nor more than five years."

The evidence shows that on one Friday morning in July 1946, the appellants were at the home of the prosecuting witness, Oscar McFadden. The appellants and the prosecuting witness lived in Laurel County about one or one and a half miles apart. About noon of the day mentioned McFadden and the appellants left McFadden's home in his truck and went to Clay County where they bought some liquor. Appellants and McFadden were together and apparently drinking together until about 2 P. M. on that date, at which time McFadden let appellants out of his truck about four miles from their home. There is no evidence of any controversy between them up to this time. About six o'clock P. M. of that same day appellants came by the McFadden home and called Oscar McFadden out of the house and engaged in conversation with him, perhaps drinking some liquor together. Up to this point there is no conflict in the evidence. According to McFadden the appellants cursed him and threatened to beat him, but this is denied by appellants. Apparently the appellants left the

McFadden place and went to Benge home where both Benge and Sargent were living at the time. None of the witnesses for the Commonwealth saw the appellants at any later time that night and, according to the testimony for appellants, they remained at the Benge home through the night and were not near the McFadden place at the time of the shooting.

The Commonwealth contends that about nine o'clock P. M. of that same night the McFadden truck, which was parked somewhere near the McFadden home, was shot into five or six times. On the next day five cartridge cases were picked up in the public road about 60 yards from the McFadden home. On that same day the sheriff of Laurel County went to the home of the appellants and found a 30 caliber Craig rifle under some manure in the Benge barn, and another cartridge case in the appellants' front yard. This rifle and the cartridge cases were forwarded by the Kentucky Highway Patrol to the Federal Bureau of Investigation Laboratory at Washington, D. C., and the special agent who made an examination of the rifle and cartridge cases testified that from his examination he was convinced that all six cartridge cases had been fired from the Craig rifle. The sheriff testified that the rifle had been fired within two or three days before he found it in the Benge barn, and is supported in this by one of his deputies. This is substantially all of the material testimony for the Commonwealth.

Appellants' evidence shows that Ernest Benge is the owner of the rifle in question, but he was not at home on the night of the shooting, having gone to Hamilton, Ohio for the purpose of obtaining employment. He says that he had shot this rifle one time on the morning he left home, which was a few days before the shooting into the truck occurred. He also says that he was afraid that his children, aged nine, seven and two, might get hurt playing with the rifle while he was gone, and that he hid it in his barn where the sheriff later found it.

It is vigorously argued for appellants that their demurrer to the indictment should have been sustained, that the verdict is flagrantly against the evidence, and that the instructions are erroneous.

The indictment is long and consists of three counts.

The first count in the accusatory part alleges that both appellants confederated and conspired to go forth with weapons, etc. and shoot into the truck of another. In the descriptive part of this count it is charged that they banded themselves together, conspired to go forth armed for the purpose of intimidating, alarming and shooting into the truck of Oscar McFadden, and that they did shoot into the truck "for the purpose of injuring said truck and intimidating, disturbing, and alarming the said Oscar McFadden and putting him in fear of death or some great bodily harm."

The second count charges the appellant Benge with shooting into the truck for the purpose of "intimidating, disturbing and alarming said Oscar McFadden and putting him in fear of death or the infliction of some great bodily harm," and the appellant Sargent with aiding, abetting and encouraging the shooting.

The third count makes a similar charge against Sargent and charges Benge with aiding and abetting.

It seems clear that there are two separate and distinct offenses defined in KRS 437.110. The offense under subsection 1 is confederating and banding together for the purpose of alarming, disturbing or injuring a person. Under subsection 2 the offense is confederating and banding together for the purpose of molesting, damaging or destroying property. In other words, subsection 1 relates solely to offenses against a person, and subsection 2 relates solely to offenses against property.

Under subsection 1 the gist of the offense is banding and confederating for the purpose prohibited by the statute. Under subsection 2 there must not only be a confederating and banding for the purpose of committing the act denounced, but there must also be an overt act because the statute says "and go forth." This difference is pointed out in Roberson's New Kentucky Criminal Law and Procedure, 2d Ed., section 1070a, pages 1300 and 1301, as follows:

"Subsection one of the statute," under consideration, "relates wholly to offenses against the person and subsection two deals only with offenses against property, and the two offenses were evidently described and denounced by different sub-sections because it was in-

tended to make a conspiracy to injure the person a complete offense without 'going forth,' while it is an essential element where the injury of property only is the object of the conspiracy there should be a 'going forth.' ''

Prior to the revision of our statutes the offenses now defined under KRS 437.110 were set forth under two sections with a separate penalty set out under each statute. Section 1241a-1, Baldwin's 1936 edition, provided for a penalty of not less than one, nor more than five years for the offense charged under subsection 1 of KRS 437.110, and section 1241a-2 of the 1936 statute provided the same penalty for the offense defined in subsection 2 of KRS 437.110. Sections 1241a-1 and 1241a-2 of the 1936 Kentucky Statutes were apparently substantially re-adopted and incorporated in KRS 437.-110, subsections 1 and 2. Section 126 of the Criminal Code of Practice provides that an indictment must charge but one offense except in certain instances not material here, and where two or more separate and distinct offenses are charged in one indictment, the indictment is defective for duplicity. Commonwealth v. Powell, 71 Ky. 7, Chappell v. Commonwealth, 200 Ky. 429, 255 S. W. 90, and Caudill v. Commonwealth, 202 Ky. 730, 261 S. W. 253.

In the case of Mirddle v. Commonwealth, 10 Ky. Opin. 500, the defendant was indicted under a statute on "banding and confederating." The indictment charged "that the parties confederated together for the purpose of alarming and intimidating one Kellner at his own house, and cut and injured a dog, the property of said Kellner." The judgment of conviction was reversed, the court saying:

"An indictment is not sufficient which charges that defendants confederated together for the purpose of alarming and intimidating one at his own house, and cut and injured his dog. It is not enough that the prosecuting witness was alarmed or intimidated by the injury inflicted on the dog; it must appear that he was alarmed and intimidated by the defendants, and further that they went to his house, not to injure the dog, but to alarm and intimidate him."

The first count in the indictment under considera-

tion here charges appellants with the offenses defined in both subsection 1 and subsection 2 of KRS 437.110, and under the authorities above cited it is clearly duplicitous and the demurrer should have been sustained.

As indicated above, the evidence introduced by the Commonwealth showing that Oscar McFadden and appellants had an argument about six o'clock P. M. on the day of the shooting and the testimony that the rifle cartridges found near the McFadden home were fired from the rifle found in the barn on the place where appellants were staying at the time of the shooting, seems to be the only evidence to support the charge of banding together for the unlawful purposes charged in the indictment. It is true that the evidence does show that appellants were together during that day and night, but there is no evidence that they conspired with each other to commit the crime charged. It may be admitted that this circumstantial evidence creates a strong suspicion that the appellants, or one of them, shot into the McFadden truck, but it is clear that there is absolutely no evidence in the record to support the charge of conspiracy. In the case of Johnson v. Commonwealth, 295 Ky. 520, 174 S. W. 2d 769, 770, we reversed a judgment of conviction where the evidence showed that the appellant was with his codefendant shortly before the shooting, and the co-defendant used the appellant's pistol to fire shots into a church, saying:

"Evidently, the jury convicted appellant because the shooting was done with his pistol and because just prior to the commission of the crime he was seen in church in company with Crook. We have many times written, 'a confederation or conspiracy may be established by the acts, conduct, or declarations of the participants or by facts or circumstances, but it may not be established by mere suspicion nor by association of the parties.' * * * It was said in the Glass case, (infra), 'a conspiracy is almost necessarily established by welding into one chain circumstances which, when considered separately, are of themselves insufficient and inconclusive, but, when connected and examined as a whole, are sufficient to show it.'

"In the instant case there is no evidence tending to prove appellant and Crook agreed to commit the crime

or even mentioned it between themselves prior to the shooting. Nor were any facts or circumstances proven tending to form a chain which links appellant with a conspiracy. The only circumstances which connect appellant with the crime are that Johnson was seen with Crook in the church shortly before the shooting, and that the shots were fired from Johnson's pistol. But those facts standing alone were no evidence from which the jury reasonably could have inferred that a conspiracy existed between these two men, and a verdict based thereon was a result of surmise and speculation.''

To the same effect see Glass v. Commonwealth, 249 Ky. 757, 61 S. W. 2d 629, Wood v. Commonwealth, 230 Ky. 813, 20 S. W. 2d 980, and Smith v. Commonwealth, 270 Ky. 367, 109 S. W. 2d 836.

Clearly there was insufficient evidence to support the verdict of the jury, and the court should have sustained appellants' motion for a peremptory instruction at the conclusion of all evidence. Since the indictment was duplicitous and therefore defective, and the evidence insufficient to sustain the charge of confederating and banding together for the purpose of committing the offense denounced by the statute referred to, the judgment must be and it is reversed for proceedings not inconsistent herewith. Having reached this conclusion it is unnecessary to consider the questions raised regarding the instructions to the jury.

Judgment reversed.