## HUGHES v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 13, 1952.

Edward L. Allen, Prestonsburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Appellant, Billie Hughes, and his son, Willard Hughes, were jointly indicted for wilful murder and for murder pursuant to a conspiracy. Upon a separate trial, appellant was convicted of voluntary manslaughter and sentenced to twenty years and one day in the penitentiary. This appeal is taken from the judgment entered upon the jury's verdict.

On the morning of January 22, 1949, appellant and his brother, Jake Hughes, were returning from a union meeting to their homes on Salt Lick Creek in Floyd County. They stopped on their arrival at Jake's residence where Millie Gibson, who was staying with Jake, got in the car with them, and the three proceeded up Salt Lick Creek with the intention of going to one Frank Nester's to procure some moonshine whiskey. Their plan was interrupted when the car was wrecked by running into a ditch at the mouth of Raccoon Creek, and they then walked back down Salt Lick Creek to the home of Allen Sloan on the main highway.

After they had reached the Sloan house, Arnold Bailey presently came along in his truck, accompanied by Alfred Duff and Claude Bailey, and Arnold Bailey agreed to go to the scene of the wrecked automobile and to help in getting it back on the road. These six persons returned to the car and Arnold Bailey succeeded in pulling it out of the ditch onto the road with the truck. Appellant could not start it, and Claude Bailey then got in the machine, started it and drove off down Salt Creek by himself. Those who had been left behind, after waiting for some time for the automobile to return, got back in the truck and drove on up the creek to Nester's where they purchased whiskey which they drank freely.

While at Nester's they met Bert Shepherd and, when an argument ensued between Arnold Bailey and appellant about leaving Nester's to go look for appellant's car, Shepherd intervened in behalf of Arnold Bailey. The argument ended, however, without any serious trouble resulting and shortly everyone in the original party, and also Shepherd, boarded the truck and went back down the creek to look for appellant's car. Claude Bailey testified at the trial that he had taken the automobile down the creek, turned it around and started back up the creek when the motor died and he was unable to get it started again. He remained in the car all night, he said.

Arnold Bailey, upon returning from Nester's, parked his truck in front of the home of Blucher Allen, across the highway from Jake's house, and, with the exception of appellant, everyone vacated the truck and proceeded up the hillside to Jake's residence. Appellant remained in the truck for about two hours watching for some sign of Claude Bailey and his car. Some time after midnight, appellant walked across the creek to his home and awakened his son, Willard. Appellant lives several hundred yards above Jake's place across Salt Creek. According to the evidence most favorable to the accused, appellant got his shotgun and his son, without appellant's knowledge, got his pistol and together they went to Jake's home. Here, entering through the kitchen, they passed on into the bedroom, with appellant leading the way. It was then approximately 2:00 a. m. There was a small light burning on the mantel and there was a bed on each side of the room. Millie Gibson, Arnold Bailey and Bert Shepherd were in one bed and Jake and his small daughter were in the other one. There is evidence that the two men in bed with Millie Gibson had been carrying on with her in an obscene manner in the presence of Jake's daughter. Jake's daughter and Arnold Bailey ran out of the room when appellant and his son entered. Jake, having become drunk at Nester's, had completely "passed out". We shall let appellant tell in his own words what happened next. He testified thus:

"When I went in there and saw them laying there in the bed with Millie and in front of my brother's little girl, I told them they ought to be ashamed, that they ought not to do Jake like that, right there in Jake's house and in front of his little girl, and one of them got up and went out and Bert Shepherd come with his knife, cutting at me and he knocked me down. We fought down between the beds and he knocked me over the foot of the bed into the floor and was cutting at me, cutting at my face, and I was trying to keep him from cutting me and he was killed."

He then explained that in the fighting the shotgun went off and the blast went up through the ceiling. We again quote him, and he stated:

"I heard my boy holler: 'Loose my daddy, loose my daddy,' and one shot was fired, and I'll say in two or three seconds another one fired and when the second shot fired Bert Shepherd's head hit me in the stomach and I crawled from in under him and got up."

Willard corroborated his father's testimony and added that he, Willard, had fired the shot that killed Shepherd.

The Commonwealth's witness, Millie Gibson, testified that appellant came into

788

Jake's home, cursing and talking about Bert Shepherd; that he had a pistol in his right hand and a shotgun in his left hand; and that he shot and killed Shepherd while the latter was sitting in a chair.

Appellant urges the following grounds for reversal: (1) Instruction No. 2 on conspiracy and Instruction No. 3 on aiding and abetting should not have been given; and (2) Instruction No. 6 and Instruction No. 7 are erroneous.

■ Instruction No. 2 on conspiracy appears to have been properly authorized by the evidence. It was conclusively shown that appellant awakened his son, Willard, and requested that he go with him over to Jake's place. They left their home together and each carried a loaded firearm, the father a shotgun and the son a .38 caliber pistol. Both participated in the brawl that resulted in the death of Shepherd. Of course, they denied they had conspired to take the life of Shepherd. They gave as their excuse for making the trip and for carrying loaded weapons that they were looking for appellant's automobile and that "they didn't know what kind of a crowd they would run into".

■ A conspiracy is almost necessarily established by welding into one chain circumstances which when considered separately are of themselves insufficient and inconclusive but when connected and examined as a whole are sufficient to show it. Helton v. Commonwealth, 245 Ky. 7, 53 S.W.2d 189; Riggsby v. Commonwealth, 232 Ky. 226, 22 S.W.2d 624; Adams v. Commonwealth, 227 Ky. 255, 12 S.W.2d 275; Murray v. Commonwealth, 224 Ky. 541, 6 S.W.2d 696. The question of whether there is a confederation or conspiracy, if there is any evidence introduced on this issue, is in every case for the jury to determine. Sosby v. Commonwealth, 221 Ky. 589, 299 S.W. 211; Asher v. Commonwealth, 211 Ky. 524, 277 S.W. 842; Middleton v. Commonwealth, 204 Ky. 460, 264 S.W. 1041.

■ Instruction No. 3 on aiding and abetting was proper under the evidence in this case. An aider and abettor is one who advises, counsels, procures, or encourages another to commit a crime. It is necessary that one charged with aiding and abetting be guilty himself of some overt act or advocacy or encouragement of his principal, who does the actual killing, and he must be actually or constructively present when the crime is committed and must participate in the commission of it by some act of his. Turner v. Commonwealth, 268 Ky. 311, 104 S.W.2d 1085; Stacy v. Commonwealth, 221 Ky. 258, 298 S.W. 696; Smiddy v. Commonwealth, 210 Ky. 359, 275 S.W. 872; Bradley v. Commonwealth, 201 Ky. 413, 257 S.W. 11. Applying these principles to the case at hand, the evidence warranted giving the instruction under attack.

Appellant, in addition, condemns the following portion of Instruction No. 3, namely, that the jury was told to find appellant guilty of the offense with which he was charged if he "willfully shot and killed Bert Shepherd not in the necessary self defense or apparent necessary self-defense of himself or of Willard Hughes * * *". It is claimed that the phrase "or to him" should have preceded "apparent necessary self-defense", and that the omission of the words insisted upon by appellant left to the jury to determine whether or not appellant was in any apparent danger at the time. It is also contended that Instruction No. 6, a modification of the self-defense instruction, and Instruction No. 7, a combination of a conspiracy and a beginning of the difficulty instruction, were erroneous. The first, by leaving out the phrase "to him" just before "apparent", appellant claims, made the jury the judge as to what was the apparent danger to appellant when the difficulty began. The second is criticized because appellant argues there is no evidence in the record that appellant's son, Willard, commenced the fight.

We shall not attempt to resolve the errors appellant claims in connection with Instructions 3, 6 and 7. We have pointed out that conspiracy in Instruction 2 and aiding and abetting set forth in Instruction 3 were proper issues to submit to the jury.

We now simply state in conclusion that the complete set of instructions, all eight of them, given by the circuit court, were approved in a case similar in all respects to the one at bar by this Court in Saylor v. Commonwealth, 210 Ky. 796, 276 S.W. 841. See also Stanley's Instruction to Juries, Sec. 869, p. 1152.

We are of the opinion that appellant had a fair and impartial trial and that no error prejudicial to his substantial rights was committed.

Wherefore, the judgment is affirmed.