## Newton et al. v. Commonwealth.

(Decided May 17, 1932.)

42

RUMSEY BOGGESS and JOHN DUNCAN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. Hamilton Rice,. Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing..

This is an appeal from a judgment convicting appellants, Henry Newton and Pete Harper, of the crime of confederating and banding themselves together for the purpose of intimidating, alarming, and disturbing another, and fixing their punishment at two years' imprisonment.

The evidence discloses that in Muhlenberg county there was a strike at the Brownsville Mine owned by the

Gibralter Coal Company. Newton was a miner, but Harper was not. Between the hours of 6 and 7 a. m., about 150 miners assembled on a road leading to the property of the mining company. When Will Fogle and his son reached the crowd he saw Newton and Harper and others there. When he drove up in his machine some of the crowd walked out in front of him and flagged him down, and asked him where he was going. He replied, "I am going to work." Sam Sisk and Will Hawkins were standing at the side of the car, and Sisk said, "By God, this is one morning you are not going to work." He said, "See here, boys, let's consider this thing, and let's reason about it." They said, "Reason, hell, you ain't going to work this morning." He said: "A good many of you are attacking—one, I can't attack all of you." He then got out of his car and Sam Sisk was standing whittling with his knife. After some discussion, Henry Newton said: "Damn it, here is the way to go around, come and turn around and go on home and get your good clothes on." Harper said, "We will just turn his car over," and they put their hands on the car. He said, "Take your hands off my car, you are not going to do anything to my car," and turned around. Newton said, "This is the way to go around." He then turned around and went home. It was his intention to go to work at the mine, and he would have done so had he not been interfered with. The men were congregated in the roadway, and had a car setting crossways in front of his car. He did not see but one man have any arms. That was Harper, who walked to Bill Hancock's car with a gun and threw it down. It looked like it was pointed at Bill Hancock. They also kept his son from going to work. No one was hurt or injured. He was not afraid of Newton by himself, but he was afraid when there were 150 persons there. Will Hancock also saw Harper and Newton with the crowd. Soon after turning off the pike to go to the Brownsville Mine he was stopped. The men were just standing there. Pete Harper told him to turn around and go on back. While there he started to step out, and Pete Harper was there with a big pistol, and threw it down toward him. He made a step or two toward Harper, who pulled the hammer and told him to stop. He did not go to work that morning because too many people told him not to. He never saw any weapons or clubs in the hands of the other people. He stayed there about ten minutes and went on back home. The driver of the car also went back.

When Mitchell Smith arrived in his car there might have been 50 men there. He recognized Pete Harper and Henry Newton. Harper was the only man that said anything. Harper flagged him down, and asked him to go back. He never put up any argument, but turned his car around and went back home. Newton never said anything to him. He never saw Harper with anything in his hand. When A. J. Woodward arrived there were about 11 men present. Afterward there were about 125 present. He was on his way to work in the mine. Some of the men told him that he was not going to work. They then got him and held him and would not let him go. One of the men had gone and the others had sticks. The men overpowered him to such an extent that he was physically unable to go on to work. He never saw Harper or Newton on that occasion. T. G. Pillow attempted to go to work at the Brownsville Mine and a bunch of men told him not to. He saw Henry Newton, but did not see Pete Harper. He never saw Henry Newton do anything. A bunch of men turned off about 15 men who wanted to go to work. They never said anything to him, but were talking to the other men. He heard some of them say: "You are not going to work today. You had as well go back and change your clothes, and don't come back tomorrow." He knew that the crowd did not aim for him and the other men to go to work. When Brooks Stovall arrived there were about 200 men there. Pete Harper stepped out in front and flagged his hat like he wanted them to stop. Pete Harper did not say anything to him. The crowd said they did not aim for them to go to work. They turned back and Henry Newton flagged them which way to go back to the pike. Nobody endeavored to hurt them, just would not let them go to work. He did not know any certain one who would not let them go to work. When Ernest Stovall arrived the crowd on the road stopped him and others. Among those there were Pete Harper and Henry Newton. They had a car crossways the road. Pete Harper was the fellow who flagged them down. He did not go to work because the man stopped them and said they were not going. He was afraid to go to work. Several men were turned back. Harper did not say anything, just flagged them down. James Fogle, son of Will Fogle, testified that Will Hawkins said: "Well ain't nobody going to work, go home and put your good clothes on and come back and join us." When witness protested, Will Hawkins said,

"Come on, we will turn the car over." He never saw any weapons in anybody's hand, only some clubs. Will Hawkins was the only man in the crowd he knew. When Frank Rich arrived with others they were in the third car. Some one he did not know said: "I know what will stop them—hang every damn one of you to a telephone post." He would have gone to work if the crowd had not stopped him. Thomas Pillow got there a little late and saw Henry Newton and Bill Hawkins, but did not see Pete Harper in the bunch. His crowd heard somebody telling Mr. Fogle they could not go, to get out and go home. He never saw any weapons in the hands of any of the men in the crowd. He did not remember seeing any clubs or sticks. When he saw Newton he was near the Fogle car and was not doing anything in particular. Herman Cobb had started to the mine and was up at the forks of the road. There was a big bunch of men there and he knew there was no use of trying to get through. He saw them stop other fellows. He saw Pete Harper stop Bill Hancock with a pistol. About 15 men were turned back. He saw Henry Newton stop a car. That was all he saw him do. He did not think it was safe for him to attempt to go to work. Henry Newton was a miner. He did not know Pete Harper's occupation. Pete Harper pulled his gun out after Hancock had got out of the car. Hancock was not advancing toward Pete when he saw him. He was close up to him. Pete put his gun in his pocket. L. B. McCandless, electrician for the Gibralter Coal Company, while en route to the mine saw a body of men as he turned off of the pike. He did not remember seeing Henry Newton or Pete Harper, but saw both of them there the next morning. The men did not prevent him from going to work. Richard Grigsby left home on Monday morning, August 25, to take his father's breakfast to him. His father worked in the mines. Some of the men stopped him and told him that he was not going to work to-day. He told them that he was going to take his Dad's breakfast and went on to the mines. He did not know whether Henry Newton or Pete Harper was there. Elwood Woodcock was stopped by a bunch of men. He did not know who stopped him. The men said he was not going to work. Some of the men cursed him. He knew Pete Harper was there. He did not see him have anything. Harper said, "By God, you ain't going to work." He figured it was not safe for him to go through.

On the other hand, Henry Newton testified as follows: He had a wife and four children, and was a coal digger. He had been mining for about 35 years. He had ceased to labor because of the wage conditions. He was on hand with the other men one morning. It was around daylight. His purpose in going there was to talk to the men who were going to work and ask them not to take their jobs. He did not say anything to them. Most of them were strangers. He never talked to anybody that morning. He was there about 25 or 30 minutes. He had no weapons, but carried a little walking stick. He saw nobody in the crowd with any weapons. He never threatened or interfered with anybody that wanted to go to work. There might have been 40 or 50 men there. He was a member of the United Mine Workers of America, and had his membership in the Brownsville Local. The matter of going up to the crossroads was not discussed at the meeting of the Local while he was there. He never knew of the meeting until somebody came and knocked on his door. This was about 4:30 a. m., and some one told him there was a meeting up the road, and that he had better go and see what they were doing. He did not remember seeing Pete Harper there. Pete was in his house when he left. Pete might have been there. He did not remain but 30 or 40 minutes. He did not see Will Fogle, Mitchell Smith, A. J. Woodward, or T. G. Pillow there. He did not remember of seeing Brooks Stovall or Ernest Stovall. He did not see any of the men trying to keep the others from going to work. He himself was not in the crowd. When he got there he saw it was a bunch of strangers. He did not think he saw Pete Harper there at all, and he did not see him with a pistol.

Appellant Harper testified as follows: He was out there on the pike. He came by himself from Henry Newton's. He left the house about 30 minutes after Newton had left. He had no job at the time. He was not on the strike and was not a member of any of the locals of the United Mine Workers. When he got there he recognized Henry Newton and Henry Meadows. He never saw Mr. Fogle or John Grigsby. He did see McCandless. There were several others he did not know. He never turned the cars around, or did anything to the men out there. He was not interested in whether the men worked in the mines or not. He did talk to Hancock. Hancock jumped out of his car with his jack in his hand and said, "I will knock your brains out with this jack." He said, "I don't

think so," and threw his gun on him. That was all he did. He was present about 30 minutes only. He had been attending some of the miners' meetings.

1. At the outset we are met by the contention that the indictment is insufficient. As pointed out in the case of Commonwealth v. Hightower, 149 Ky. 563, 149 S. W. 971, section 1223, Kentucky Statutes, making it an offense for two or more persons unlawfully to confederate or band themselves together and go forth armed or disguised for the purpose of intimidating or alarming any person, or to do any felonious act, was repealed by the act of 1902, now sections 1241a-1 to 1241a-7, Kentucky Statutes, and it is no longer necessary to charge in the indictment that the accused went forth armed. At the same time it was pointed out that such additional allegations were mere surplusage, and need not be proved, and we have subsequently ruled that such allegations did not render the indictment demurrable. Weisiger v. Commonwealth, 215 Ky. 172, 284 S. W. 1039. The indictment under consideration followed the statute and aptly stated the facts constituting the offense, and there can be no doubt that the language employed was clearly sufficient to apprise the accused of the crime charged. We therefore conclude that the indictment was sufficient.

2. The next error relied on is that the verdict was flagrantly against the evidence. An examination of the evidence detailed above will show that, on the one hand, appellant Henry Newton claimed that he went to the place where the crowd was assembled solely for the purpose of persuading the men who were going to work not to take the places of the strikers, and that he neither did nor said anything for the purpose of alarming or intimidating them, and that appellant Harper, who was not a striker, took no part in the affair except to draw his pistol when Hancock threatened to hit him with a jack; while, on the other hand, numerous witnesses for the commonwealth testified to speeches and acts by both appellants reasonably calculated to alarm and intimidate the men who were going to work. In view of this situation it cannot be said that the verdict is flagrantly against the evidence.

3. While John Grigsby, foreman of the Gibralter Coal Company, was on the stand, he produced three cards, one of which he found posted on the company's property, and the other two were found by other men and

brought to him. Card No. 1 reads as follows: "Union men stay out. Scabs work today. Go to hell tonight. Call a meeting today. Men we mean business." Card No. 2 reads as follows: "Union men stay out. Scabs work today. Go to hell tonight. Have a meeting today. Get together." On card No. 3 is the picture of a man hanging from a tree, accompanied by the following: "All you scabs better stay away for we will sure be after you." At first all three cards were permitted to go to the jury, but at the conclusion of the evidence for the commonwealth cards Nos. 2 and 3 were withdrawn and the jury admonished not to consider them. The reason for excluding cards 2 and 3 was that they were discovered and brought to the witness by others, while he himself found card No. 1. In our opinion none of these cards was admissible in evidence. All that the evidence shows is that they were found on the company's property. It was not shown that either Harper or Newton put them up, or that they were put up by some other person with their knowledge, or that any of the persons with whom they were associated at the time of the alleged acts of intimidation put up the cards. In the circumstances there was nothing whatever connecting appellants with the cards, and as all three of them were read and exhibited to the jury, the subsequent exclusion of two of them was not sufficient to remove the prejudicial impression already made on the minds of the jurors.

4. John Grigsby, foreman, was also permitted over the objection of appellants to testify as follows:

"Q. After this body of men that you saw up there on August 25th on the property were you able to get enough employees to operate the mines immediately afterwards? A. No, sir.

"Q. 38. How many of your employees quit work for the time being immediately after August 25th, 1930? A. All we had, except three.

"Q. 39. You know about how many you had at that time? A. Had eighty-two.

"Q. 40. You know why they quit, Mr. Grigsby? A. They said they were afraid to work."

While what was said and done by appellants and others in their presence on the occasion in question was admissible to show the purpose for which they were banded together, the inability of the mining company immediately thereafter to get enough employees to oper-

ate the mine may have been due to too many other causes to make it admissible on the question of conspiracy. Not only so, but what the employees who refused to work said to the foreman was pure hearsay. On another trial the quoted evidence will be excluded.

5. Newton's evidence was that he went to where the crowd was assembled solely for the purpose of asking the men who were going to work not to take the jobs of the strikers, and not in pursuance of any conspiracy to alarm or intimidate them. Harper's defense was that he went to the place purely as a spectator, and not pursuant to a conspiracy to alarm or intimidate the men, and that he took no part in the proceedings except to point his gun at Hancock, who was advancing on him with a jack. In prosecutions for confederating to intimidate and alarm another we have held that it was proper in some circumstances to give an instruction presenting the defense of the accused; Gambrel v. Commonwealth, 80 S. W. 808, 26 Ky. Law Rep. 28; Turner v. Commonwealth, 229 Ky. 493, 17 S. W. (2d) 402; and we think the facts of this case call for such instructions. Therefore on another trial the court, in addition to the instruction, given on the first trial, will give the following instructions:

"(1) If you believe from the evidence that the defendant, Henry Newton, joined the crowd on the occasion in question solely for the purpose of persuading the men who proposed to work not to take the places of the striking miners, and did not do so in pursuance of a confederacy to intimidate, alarm or disturb them, or any of them, in the manner and by the means defined in the first instruction, you will find him not guilty."

"(2) If you believe from the evidence that the defendant, Pete Harper, joined the crowd as a mere spectator on the occasion in question, and did not do so in pursuance of a confederation to intimidate or alarm any of the men who were going to work, and took no part in the proceedings except to draw his pistol to repel an attack about to be made on him by Will Hancock with a jack, you will find him not guilty."

Judgment reversed, and cause remanded for a new trial consistent with this opinion.