## Tyree v. Commonwealth.

(Decided April 20, 1934.)

824

B. F. DENHAM for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Reversing.

Rex Tyree, Troy Tyree, and Tom Tyree were indicted on a charge of confederating and banding themselves together for the purpose of intimidating, alarming, disturbing, and injuring Gilbert Hood, and on his separate trial Rex Tyree was convicted and his punishment fixed at two years in prison.

It is his contention that he was entitled to a directed verdict in his favor and that the instructions were erroneous. The disposition of the first question requires a review of the evidence.

Troy Tyree was a brother and Tom Tyree, a second cousin of the appellant. Some time prior to the happenings out of which this prosecution arose, a mill owned by Gilbert Hood was broken into, and he caused a court of inquiry to be held to ascertain if possible the identity of the guilty party. He accused Rex Tyree, but it does not appear that any warrant was issued for the latter's arrest. A short time after the court of inquiry was held, Troy Tyree moved from Monroe county to Warren county. He procured the services of his brother, Rex Tyree, and his cousin, Tom Tyree, in assisting him to move; each of them furnishing a wagon and a team of horses. In going from his old home in Monroe county to his new home in Warren county, it was necessary to pass along the public road in front of Gilbert Hood's home. Rex Tyree was driving his wagon, and Tom Tyree and Troy Tyree were following him in the other wagon. Gilbert Hood and other witnesses for the commonwealth testified that about 8 o'clock on the evening of February 27, 1933, some one on the road in front of Hood's house called Hood and asked him to come over. Hood testified that he did not know who was calling, but that he walked down to the road. He found the three Tyrees. They were standing together in the road, and the two wagons were about 60 yards away down the road. As soon as he arrived they began cursing him

and asking him if he wanted to hold another court of inquiry. They surrounded him, one cutting off his retreat to the house, and both Rex and Troy cut him with a knife. He was not seriously injured, but his clothes were badly cut. He called for help, and two of his sons came to his rescue. One of the sons was cut with a knife in the melee that followed. Appellant admitted there was ill feeling between him and the prosecuting witness, but he denied that he called Hood from his home on the night in question. He admitted, however, that as he was passing the Hood home he was singing, in substance, "Old Gilbert Hood, why don't you come out and hold another court of inquiry?" He claimed that, as he was driving along the road, he came upon Gilbert Hood standing by the side of the road, and that Hood stopped him, began abusing him, and started the altercation; that he had never discussed the trouble between Hood and himself with his brother or cousin, and at the time the altercation commenced they were in a wagon three or four hundred yards to the rear; and that, when they drove up and saw appellant and Hood engaged in a difficulty, they attempted to separate them and, when Hood's two sons arrived, attempted to prevent them from attacking appellant. Troy Tyree and Tom Tyree testified to the same effect.

It will thus be seen that there is evidence presenting a clear-cut issue as to the existence of an understanding between appellant, his brother and cousin. It is insisted, however, that there was no evidence of the existence of a conspiracy, and that mere relationship between the parties or association does not show a conspiracy. While a conspiracy cannot be established by suspicion nor by evidence showing relations and associations between the parties which are natural and reasonable, a conspiracy may be shown by circumstances from which the jury may infer its existence. In Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476, 478, it was said:

"A conspiracy is almost necessarily established by the welding into one chain of a number of links, each in itself inconclusive and insufficient to prove the conspiracy, but, when connected and examined as a whole, sufficient to show it."

Here we have ill feeling existing between appellant and Gilbert Hood, and, according to the evidence for the

commonwealth, Hood was called from his home in the nighttime, and when he reached the road he found the three Tyrees standing there together 60 yards from their wagons which they had abandoned down the road and immediately upon his arrival at the point where they were standing all of them attacked him. It is a natural inference that this resulted from a previous understanding between them. Appellant relies upon the case of Glass v. Commonwealth, 249 Ky. 757, 61 S. W. (2d) 629, in support of his contention that the evidence was insufficient to show a conspiracy, but in the Glass Case there was no evidence of ill feeling on the part of any of the parties and none of Glass' associates took any part in the assault on the prosecuting witness. The evidence in the instant case was clearly sufficient to authorize a submission of the case to the jury.

The court instructed the jury, in substance, that, if they believed from the evidence beyond a reasonable doubt that the three Tyrees did willfully band themselves together for the purpose of alarming, intimidating, disturbing, or injuring Hood, they should find the defendant, Rex Tyree, guilty as charged in the indictment.

The appellant insists that the court erred in its instructions in failing to instruct the jury specifically as to the defendant's theory of the case. The cases of Alsbrook v. Commonwealth, 243 Ky. 814, 50 S. W. (2d) 22, 25; Newton v. Commonwealth, 244 Ky. 41, 50 S. W. (2d) 18; Fulks v. Commonwealth, 237 Ky. 642, 36 S. W. (2d) 36, and Turner v. Commonwealth, 229 Ky. 493, 17 S. W. (2d) 402, are relied upon.

It is urged on behalf of the commonwealth that appellant failed to object to the instructions given or to request additional instructions, and that therefore he cannot raise the question on this appeal. In his motion and grounds for a new trial he raised the point that the trial court improperly instructed the jury and thus preserved his rights. Barton v. Commonwealth, 238 Ky. 356, 38 S. W. (2d) 218; Thomas v. Commonwealth, 146 Ky. 790, 143 S. W. 409.

In the Turner Case cited by appellant, Henry Turner, Sr., and three others were indicted on a charge of banding themselves together for the purpose of intimidating, alarming, disturbing, and injuring Kent Cornett, Arthur McIntosh, and Mary Little. The evidence for

,the commonwealth was to the effect that Henry Turner, Sr., and his codefendants appeared at the home of Mary Little and fired into the house and at Arthur McIntosh without provocation. The evidence for the defendant was to the effect that he and his codefendants were at his home when they heard his daughter screaming for help. They went to a point near the Little home for the purpose of investigating the cause of the trouble when some one began firing on them with a shotgun. It was held that the trial court erred in failing to give an instruction presenting the defendant's theory of the case.

In Newton v. Commonwealth, Henry Newton ·and Pete Harper were convicted of the crime of confederating and banding themselves together for the purpose of intimidating and disturbing another. Newton was a miner, and there was a strike at the mine where he was employed. Newton and Harper were seen at a point where a large number of striking miners were assembled, some of whom were attempting to intimidate men who were going to work. Newton testified that he was present, but that he took no part in the disturbances that arose and never threatened or interfered with anybody that wanted to go to work. Harper testified that he was not a miner, was not interested in the strike, and was merely a spectator on the occasion in question. It was held that each of the defendants was entitled to an instruction presenting his theory of the case.

In the case of Alsbrook v. Commonwealth, the defendant and his associates were also miners out on a strike. They were accused of banding themselves together for the purpose of intimidating and disturbing other miners who were proposing to work. The defense was that Alsbrook was not attempting to coerce or to compel other miners to refrain from work, but was merely attempting by argument and peaceable means to induce them to join the strikers. It was held that the defense should have been submitted in a separate instruction, the court saying:

"In this case the evidence was such as to support either conclusion, depending upon the credibility of the witnesses, and the verdict of the jury in such a case is conclusive on the parties as well as the court. The instructions, however, should leave no room for

cavil, but should distinctly and definitely delineate the rights of both the defendant and the commonwealth. Cf. Newton & Harper v. Com., 244 Ky. 41, 50 S. W. (2d) 18, this day decided. They should advise the jury accurately the law applicable to the state of facts found from the evidence to have been established.''

In Fulks v. Commonwealth, the defendant and his brother went to the office of Lindsey Bruce, an attorney. An altercation arose, and the Fulks brothers threatened to subject Bruce to corporal punishment. Ill feeling had existed for some time between Bruce and his client, Davis, on the one side and the Fulks brothers on the other. The evidence for the defendant tended to show that the altercation with Bruce grew out of sudden heat and passion engendered after the parties reached his office and not as the result of a conspiracy, and the judgment was reversed because the trial court failed to give an instruction presenting the defense of the accused. To the same effect is the case of Gambrel v. Commonwealth, 80 S. W. 808, 26 Ky. Law Rep. 28.

Those cases cannot be distinguished from the instant case, and it follows that an instruction embodying the defense relied on by appellant should have been given to the jury.

The judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.