## Jones et al. v. Commonwealth.

October 17, 1947.

J. S. Forester, Judge.

610

L. C. Wall and Astor Hogg for appellants.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On May 7, 1947, the grand jury of Harlan County returned an indictment against appellants, Dave Jones, Woodrow Halcomb, James H. Hogg and Lawrence Nolan, accusing them of the offense of confederating and banding together and going forth to intimidate, alarm and disturb one Clyde Beals. Defendants entered a plea of not guilty and were tried together, followed by a verdict finding each of them guilty and fixing punishment for each of them at confinement in the penitentiary for the period of one year, the minimum penalty provided by the statute, which is section 1241A-1 of Carroll's 1936 Edition of the Kentucky Statutes, and being subsections (1, 2, 3) of KRS 437.110.

Only two grounds for a reversal of the judgment are argued in brief of appellants' counsel, which are, (1) the evidence was insufficient to authorize a submission of the case to the jury, and a peremptory instruction of acquittal for each of the appellants should have been given, and (2) that the court failed in its instruction to submit to the jury the defendants' contention, that although they had banded themselves together to contact Beals, the prosecuting witness, and had gone forth for that purpose, yet they only purposed to peaceably persuade him to cease working at the job in which he was engaged, which a short while before was filled by the defendant, Halcomb.

The undisputed facts are these: One Isaacs operated a picture show in the town of Cumberland, Harlan County, Kentucky, and Halcomb operated the machine which projected the picture upon the screen. Isaacs removed him from Cumberland, Kentucky, to Whitesburg, Kentucky, and employed in his stead the prosecuting witness, Beals, who lived just across the Kentucky line in Virginia. Halcomb was dissatisfied with his removal

and desired to oust Beals from the position and regain it for himself. He probably had talked to Beals concerning it. Halcomb knew the hour of the day that Beals came from his home in Virginia to Cumberland, and on the day before the alleged crime was committed he solicited and procured the other defendants in the indictment to go with him to the top of Black Mountain, a mountain range between the residence of Beals in Virginia and his place of work in Cumberland. He consulted two others besides the three other defendants, but they declined to participate in the projected scheme of meeting Beals at the lonely spot on top of the mountain while on his way to work.

When the four got to the top of the mountain (the decline therefrom to the foot of the mountain being six miles) Halcomb left the car and secluded himself behind a curve in the road so that he could not be seen by Beals when accosted by the other defendants on top of the mountain, as had been agreed to. The automobile carrying the defendants to the spot was more or less hidden from a traveler on the highway by being parked on a side road some 30 feet or more from the highway on which Beals was traveling. The other three defendants stationed themselves by the side of the highway and when Beals got close enough the defendant, Hogg, signalled for him to stop causing Beals to reduce his speed, when Hogg jumped on the running board and projected his hand into the car and said: "We want to talk to you." Beals replied, "Let me get over the mountain" and immediately threw his car into high gear and proceeded down the mountain side, and to use his language, "I slung him (Hogg) off." (Our parenthesis). As he descended the mountain he saw Halcomb located around a curve in the highway, but he was traveling too fast for Halcomb to stop him. Witness testified that he was alarmed by what occurred on the mountain and that he was convinced that the defendants intended to do him harm for having accepted the job formerly filled by Halcomb.

Defendants testified that in the agreement entered into before embarking on their mission to the mountain top to meet Beals they purposed only a peaceable meeting with him, yet two other prosecuting witnesses who were approached to join the crowd testified to the con-

trary. One of them was Bob Reno who testified that when he was approached to join the crowd he was told that they were going up on the mountain "to stop a man from coming to work at the Cumberland Theater." Jim Sanders was also approached to join the crowd and he stated: "Halcomb told me they were going to stop him; they said he was scabbing." But neither Reno nor Sanders joined the crowd.

Beals also testified—and which was uncontradicted by any witness for the defense—that before he arrived at the foot of the mountain the Buick car driven by the defendants overtook him and tried to pass him while continually blowing their horn, but by manipulating his car he prevented them from doing so because if they got in front of him with their car they would stop him and carry out their unlawful purpose, as he conceived. Upon arriving at the foot of the mountain Beals applied to a police judge for a warrant against defendants for their unlawful detention of him at the lonely spot described, but he only knew one of them (Halcomb), and on the advice of the judge he went to Halcomb's home to ascertain the names of the other three alleged confederates which resulted in a quarrel and a fight, but which we conceive has no bearing upon the merits of this case.

Beals also testified, and which no one denied, that when Hogg stepped upon the running board of his car the other two alleged conspirators started toward his car from the side of the highway where they were standing as the witness approached.

In their "Index to points and authorities" counsel for appellants cites only one case, which is, Helton v. Com., 245 Ky. 7, 53 S. W. 2d 189, 190. In our opinion in that case, it is said: "While a confederation or conspiracy may not be established by mere suspicion, nor by relationship, nor association of the parties, but, like any other fact, its existence may be established by the actions, conduct, or declarations of the participants, or by facts and circumstances, and such evidence need not be direct or positive. Com. v. Ellis, 133 Ky. 625, 118 S. W. 973; Gabbard v. Com., 159 Ky. 624, 167 S. W. 942; Owens v. Com., 181 Ky. 378, 205 S. W. 398; Slaven v. Com., 197 Ky. 790, 248 S. W. 214; Skillian v. Com.,

206 Ky. 586, 268 S. W. 299; Myers v. Com., 210 Ky. 373, 275 S. W. 883; Howard v. Com., 220 Ky. 585, 295 S. W. 888; Crenshaw v. Com., 227 Ky. 223, 12 S. W. 2d 336; Bright v. Com., 235 Ky. 781, 32 S. W. 2d 351; Fulks v. Com., 237 Ky. 642, 36 S. W. 2d 36. A conspiracy is almost necessarily established by welding into one chain circumstances which when considered separately are of themselves insufficient and inconclusive, but when connected and examined as a whole, are sufficient to show it. Gibson v. Com., 189 Ky. 89, 224 S. W. 657; Anderson v. Com., 196 Ky. 30, 244 S. W. 315; Middleton v. Com., 204 Ky. 460, 264 S. W. 1041; Eubank v. Com., 210 Ky. 150, 275 S. W. 630; Murray v. Com., 224 Ky. 541, 6 S. W. 2d 696; Adams v. Com., 227 Ky. 255, 12 S. W. 2d 275; Riggsby v. Com., 232 Ky. 226, 22 S. W. 2d 624.''

A number of later opinions of this court in similar prosecutions, the statement of the rule as contained in that excerpt, approved it as announced in the Helton case, which clearly and convincingly demonstrate that the court committed no error in submitting to the jury the issue of defendants' guilt.

In the body of the brief of counsel for defendants they cite the cases of Tyree v. Com., 253 Ky. 823, 70 S. W. 2d 930; Alsbrook v. Com., 243 Ky. 814, 50 S. W. 2d 22; Newton v. Com., 244 Ky. 41, 50 S. W. 2d 18; Fulks v. Com., 237 Ky. 642, 36 S. W. 2d 36, and Turner v. Com., 229 Ky. 493, 17 S. W. 2d 402, in support of their contention (2) that the court should have instructed the jury, in substance, that if they believed that the defendants' only purpose was to peaceably persuade the prosecuting witness, Beals, to quit his job formerly performed by Halcomb, and to cease working for Isaacs, they should find defendants not guilty; but that question was substantially submitted in the instruction that the court gave, which stated that before a verdict of guilty should be rendered the jury should believe beyond a reasonable doubt that the defendants "did unlawfully, feloniously confederate or band together" and in pursuance thereof "go forth for the purpose of intimidating or alarming or disturbing Clyde Beals by attempting to stop him on his way to work in a threatening manner" etc. Another instruction defined "confederating or banding together," of which no complaint is made. It was followed by the reasonable doubt in-

struction. Therefore, before the jury could find the defendants guilty they were compelled by the given instruction to believe that appellants banded together and went forth to unlawfully alarm or disturb or intimidate the prosecuting witness and which was overwhelmingly proven not only by the two witnesses referred to supra, who were approached to join the band but declined to do so, but also by every circumstance in the case confirming that their purpose was not intended to be peaceable but to "stop a man from coming to work at the Cumberland Theater," and to oust the prosecuting witness from the job that had been given him by Isaacs.

If the purpose of defendants was peaceable then why select the isolated and uninhabited mountain top in order to peaceably converse with him, when continuous opportunities were afforded whereby a peaceable persuasion could have been accomplished in the town of Cumberland instead of at a spot where no one could come to the rescue of Beals, and where the confederates would be unmolested in their evidently formed determination to substitute Halcomb in his old job and to force Beals to vacate it?

Their purpose is too glaring to admit of doubt and is undoubtedly a case where "Actions speak louder than words."

The contention of appellants' counsel for the converse instruction they insist should have been given, is answered adversely in a number of opinions of this court, wherein it was insisted by appellants that the court should instruct the jury that if the accused was not present when the crime was committed, and was not a member of a conspiracy to commit it, and the jury so believed, then they should acquit the defendant. In every case—and there are many—where that question was presented we have uniformly held that the rights of the defendant on trial did not require such an instruction and it was not prejudicial for the court to refuse to give it, since the issue of guilt or innocence was properly incorporated in the principal instruction submitting the guilt of the defendant on trial. None of the five cases cited in the body of appellants' brief are in point as will readily be seen by consulting them. In each of them no previous agreement to approach the

prosecuting witness for any purpose was shown. On the contrary it appeared that the meeting of defendants with the prosecuting witness was only casual.

We are convinced that the evidence in this case brings it completely within the statute, and that no prejudicial error was committed by the trial court.

Wherefore, the judgment is affirmed.